# United States Court of Appeals
## For the First Circuit

No. 12-1759

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL LUIS PIZARRO, a/k/a WEE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Lipez and Kayatta,
Circuit Judges.

Mauricio Hernández Arroyo for appellant.
Myriam Yvette Fernández-González, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, were on brief, for appellee.

November 14, 2014

**LIPEZ, Circuit Judge**.  In this appeal of Angel Luis Pizarro-Morales ("Pizarro") from his conviction and sentence for conspiracy to distribute cocaine and heroin and for possession with intent to distribute cocaine, we must examine the impact of Alleyne v. United States, 133 S. Ct. 2151 (2013), on the aggravated drug conspiracy and possession convictions.  Pursuant to that inquiry, we hold that the district court erred by failing to instruct the jury on the essential element of individualized drug quantity for the aggravated conspiracy count and the essential element of drug quantity for the aggravated possession count before applying a statutory sentencing range that included a mandatory minimum sentence on each count.  However, since we "conclude[] beyond a reasonable doubt that the omitted element[s] [were] uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error[s]," we find the instructional Alleyne errors harmless.  Neder v. United States, 527 U.S. 1, 17 (1999).  Therefore, we affirm Pizarro's convictions for the aggravated conspiracy and possession charges with enhanced drug quantities under 21 U.S.C. § 841(b)(1)(A).

Still, we must vacate Pizarro's sentence and remand for a fourth sentencing under § 841(b)(1)(A) because the district court overlooked our prior remand order by refusing to engage in credibility assessments with respect to the conspiracy drug

quantity the court attributed to Pizarro and by refusing to consider Pizarro's arguments regarding the firearm enhancement.

## I.

### A. First Sentencing and Appeal

After a ten-defendant trial that lasted approximately seven months in 1999, Pizarro was found guilty of conspiracy to distribute cocaine and heroin and possession with intent to distribute cocaine. In 2002, pursuant to an order of the First Circuit Judicial Council, the case was reassigned for sentencing.[1]

The statutory sentencing ranges for drug conspiracy and possession, prescribed in 21 U.S.C. § 841(b)(1), vary depending upon the amount of drugs involved. For a conspiracy or possession that involves only small or non-quantified amounts of cocaine or heroin, there is no mandatory minimum sentence and the statutory maximum sentence is twenty years of imprisonment. See 21 U.S.C. § 841(b)(1)(C). At the other end of the spectrum, when a conspiracy or possession involves five kilograms or more of cocaine or one kilogram or more of a mixture or substance containing a detectable amount of heroin, the sentencing range runs from a

---

[1] In response to a backlog of cases on the trial judge's docket, the case was randomly reassigned to another district judge so that sentencing could be expedited. See United States v. Casas, 425 F.3d 23, 54-55 (1st Cir. 2005).

mandatory minimum of ten years to a maximum of life imprisonment. Id. § 841(b)(1)(A).[2]

At sentencing, the district court determined that § 841(b)(1)(A)'s statutory maximum of life imprisonment applied because the conspiracy involved five kilograms or more of cocaine or one kilogram or more of a mixture or substance containing heroin. By a preponderance of the evidence, the court found Pizarro accountable for more than 150 kilograms of cocaine and applied a two-level enhancement for weapon possession and a three-level role enhancement. The court then imposed a life sentence, which at that time was mandated by the Sentencing Guidelines. Pizarro appealed his conviction and sentence. We affirmed Pizarro's conviction but vacated his sentence because of error under United States v. Booker, 543 U.S. 220 (2005). See United States v. Casas, 425 F.3d 23, 59-60 (1st Cir. 2005).[3]

Pizarro and multiple co-appellants also argued that there was error under Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Supreme Court held that "[o]ther than the fact of a

---

[2] Section 841(b)(1)(B) provides for a five-year mandatory minimum and a forty-year statutory maximum sentence for specified drug quantities less than those listed in subsection (A).

[3] We held that Booker error existed insofar as the sentencing had occurred under a mandatory Guidelines system. Given that the government conceded that it could not prove harmless error, i.e., it could not "show beyond a reasonable doubt that a lower sentence would not be imposed under the post-Booker regime," we vacated Pizarro's sentence and remanded for resentencing. Casas, 425 F.3d at 59-60.

-4-

prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Pizarro and his co-appellants asserted that since drug quantity for the conspiracy count was a fact that increased the statutory maximum sentence, it should have been found by a jury beyond a reasonable doubt. They argued that in the absence of such a jury determination, § 841(b)(1)(C)'s default statutory maximum sentence of twenty years should have applied to the conspiracy count.

In response to this argument, we held that "for Apprendi purposes, it is the drug quantity attributable to the entire conspiracy that determines the statutory maximum." Casas, 425 F.3d at 66 n.58. We concluded that any Apprendi error, if one occurred, was harmless because (1) the evidence overwhelmingly established that the conspiracy involved at least five kilograms of cocaine or one kilogram of heroin, amounts that support a statutory maximum of life imprisonment, and (2) Pizarro and his co-appellants had not pointed to any evidence that the conspiracy-wide quantity was under that threshold amount or offered any argument as to how the jury could have found otherwise. Id. at 65-66. We explained that the appellants did not contest the evidence of conspiracy-wide drug quantity -- the amount that sets the statutory maximum for Apprendi purposes. Id. at 66 & n.58. We therefore ordered that

"on remand for re-sentencing the appropriate statutory maximum will be life imprisonment as stated in § 841(b)(1)(A)." Id. at 66.

In remanding, we "clarif[ied] that the jury verdict of guilty did not determine the amount of drugs attributed to each defendant," id. at 64 n.56, which was necessary for sentencing under the Sentencing Guidelines. Cooperating witnesses had testified about drug quantity, and, at sentencing, defendants had called into question the credibility of those witnesses. Id. We explained that the district court had to make credibility determinations in order to calculate individualized drug quantity, and we made clear that "[a]ny conclusion as to individual drug quantity should be based on review of the entire record." Id. We also observed that a number of the Presentence Reports ("PSRs") contained the "defect" of not including "findings as to the quantities or types of drugs attributable to the individual defendants." Id. at 63.

Pizarro and his co-appellants had also argued that the successor judge responsible for the initial sentencing had not adequately familiarized himself with the voluminous record. We held that a replacement judge could become sufficiently familiar with the record to assess credibility, but we declined to analyze the sentencing judge's familiarity because we were vacating the sentences on independent Booker grounds. Casas, 425 F.3d at 56-57.

## B. Second Sentencing and Appeal

In 2006, the district court found Pizarro responsible for more than 4,200 kilograms of cocaine. The court imposed a two-level firearm enhancement and a two-level enhancement for Pizarro's leadership role in the offense. The court resentenced Pizarro to 360 months (30 years) in prison. Pizarro again appealed, and we vacated his sentence for a second time because the district court had not analyzed witness credibility in calculating the drug quantity in the conspiracy foreseeable to Pizarro. United States v. Correy, 570 F.3d 373, 378-82 (1st Cir. 2009). We ordered the district court on remand to make independent credibility assessments as necessary to resolve the facts in dispute. Id. at 379-82, 400, 402.

We also found that Pizarro's PSR had the same problematic lack of support that, on Pizarro's first appeal, we had specifically noted in the PSRs of several of Pizarro's co-appellants. Id. at 398-400. Therefore, we ordered the Probation Office to provide Pizarro with a proper PSR that identified specific drug quantities attributable to him, "include[d] references to the trial record" that supported those drug quantities, and "identifie[d] the trial transcripts which support[ed] any conclusion that he possessed weapons or that weapon possession by co-conspirators was foreseeable to him." Id. at 384,

401.[4]  We further ordered that "Pizarro should have a real opportunity to challenge [an] inference [that he could foresee the use of weapons] by arguing the question of foreseeability to a fact-finder willing to consider his arguments," and we left Pizarro's challenge to a leadership enhancement, a fact-specific issue, to be resolved on remand.  Id. at 401.

## C.  Third Sentencing and Appeal

Pizarro's case was reassigned for a second time to a different district court judge because the former sentencing judge had retired.  On May 15, 2012, the district court found Pizarro responsible for in excess of 150 kilograms of cocaine and resentenced him under § 841(b)(1)(A) to 280 months (23 1/3 years) of imprisonment as to each count to be served concurrently. Pizarro now appeals for a third time, making numerous arguments, including that the district court committed an Alleyne error by applying a mandatory minimum sentence without the requisite drug quantity findings by the jury.  Notably, that argument challenges the convictions for the aggravated offenses with enhanced drug

---

[4] Pursuant to Federal Rule of Criminal Procedure 32(c), the probation officer generally must conduct a presentence investigation and submit a report to the court before it imposes a sentence.  Rule 32(e) provides that the Probation Office must provide the PSR to the defendant, the defendant's attorney, and an attorney for the government at least thirty-five days before the sentencing, and Rule 32(f) provides the procedures for the parties' objections to the PSR.  The sentencing court then examines the PSR and the objections to the PSR when deciding the proper sentence and considering the requisite factors for that sentence, such as the credibility determinations here.

quantities under § 841(b)(1)(A). He also maintains that the district court committed multiple sentencing errors, some of which resulted from its failure to comply with our remand instructions in Casas and Correy.

## II.

We first analyze the claim of Alleyne error related to Pizarro's convictions.

## A. The Alleyne Rule

In Alleyne, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Alleyne, 133 S. Ct. at 2155. Therefore, a district court errs by applying a statutory mandatory minimum as the sentencing starting point without a jury finding on the fact that triggers that minimum. The Supreme Court held that such a rule was required by the Apprendi principle that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S. Ct. at 2155 (citing Apprendi, 530 U.S. at 483 n.10, 490). In Alleyne, the Supreme Court expressly overruled its prior holding in Harris v. United States, 536 U.S. 545 (2002), that the jury did not need to find a fact that increases the mandatory minimum. Alleyne, 133 S. Ct. at 2155. The government properly concedes that Alleyne error occurred with respect to both the conspiracy and possession counts.

**B.  The Application of <u>Alleyne</u> to this Appeal**

The Supreme Court's decision in <u>Alleyne</u> applies to any case pending on direct appeal at the time <u>Alleyne</u> was decided.  <u>See</u> <u>Griffith</u> v. <u>Kentucky</u>, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.").  In <u>Ramirez-Burgos</u> v. <u>United States</u>, 313 F.3d 23 (1st Cir. 2002), we held that a new Supreme Court precedent -- <u>Jones</u> v. <u>United States</u>, 526 U.S. 227 (1999) -- applied retroactively to Ramirez's case.  <u>Ramirez-Burgos</u>, 313 F.3d at 29.  We had previously affirmed Ramirez's convictions, vacated his sentence, and remanded to the district court for resentencing.  <u>Id.</u> at 27.  After Ramirez was resentenced and one day after he filed his reply brief in his second appeal, the Supreme Court decided <u>Jones</u>.  <u>Id.</u> at 28.  Citing <u>Griffith</u>, we held that Ramirez could bring a new claim of jury-instruction error under <u>Jones</u> because Ramirez's case was still on direct appeal at the time <u>Jones</u> was decided.  <u>Id.</u> at 29 (citing <u>Griffith</u>, 479 U.S. at 328).  <u>See</u> <u>also</u> <u>Berman</u> v. <u>United States</u>, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence.  The sentence is the judgment."); <u>United States</u> v. <u>Dodson</u>, 291 F.3d 268, 275-76 (4th Cir. 2002) (holding that where court of appeals affirms convictions

but vacates sentence and remands for resentencing on any count, judgment of conviction is not final as to all counts).

Alleyne was decided in 2013 after we had twice vacated Pizarro's sentence and remanded for resentencing, and after Pizarro had filed his opening brief in this third appeal. The fact that the Supreme Court denied Pizarro's petition for a writ of certiorari after his first appeal, Pizarro-Morales v. United States, 546 U.S. 1199 (2006), does not change the fact that his judgment of conviction was not final at the time Alleyne was decided, given that we had vacated his sentence and remanded for resentencing. See Berman, 302 U.S. at 212 (indicating that a judgment of conviction would not be final if the sentence were vacated); see also Mercer v. Theriot, 377 U.S. 152, 153 (1964) (per curiam) (holding "it is settled that [the Supreme Court] may consider questions raised on the first appeal [after which the Court denied a petition for a writ of certiorari], as well as those that were before the court of appeals upon the second appeal," after which the Court granted a petition for a writ of certiorari (internal quotation marks omitted)); Dodson, 291 F.3d at 276 n.3 (citing Mercer for the proposition that following a second direct appeal brought after a resentencing hearing ordered by the court of appeals in a criminal defendant's first direct appeal, the defendant can petition the Supreme Court for certiorari as to every

issue, including those the court of appeals denied in his first appeal).

Therefore, as the government recognizes in its supplemental brief,[5] Pizarro's case was pending on direct appeal at the time that the Supreme Court handed down Alleyne, and Pizarro can now challenge his convictions under the new rule announced in Alleyne.  See Ramirez-Burgos, 313 F.3d at 29.

## C.  The Alleyne Errors Here

Before explaining the Alleyne errors that the government concedes, we must first address the government's claim that Pizarro may have waived his Alleyne argument because of the way he conducted this appeal.  The government takes the position that "[w]hen Pizarro filed his appellate brief on February 13, 2013, he had the opportunity but failed to raise on appeal the claim that his sentence was imposed in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000), since the 10-year mandatory minimum was based on the court's findings as to drug quantity."  However, the government is simply wrong.  Pizarro did raise his Alleyne claim in his opening brief by arguing that "a conspiracy-wide, judicial determination of quantity by a preponderance [of the evidence] for the purpose of establishing a statutory sentencing range in a 21 U.S.C. § 846 conspiracy is error."  He concluded that "after

---

[5] During oral argument, we instructed the government and Pizarro to file supplemental briefs on the Alleyne issue.

-12-

<u>Apprendi</u>, a jury should be required to make an individual determination of drug quantity beyond a reasonable doubt to establish a statutory sentencing range in a 21 U.S.C. § 846 conspiracy."  The argument that the "statutory sentencing range" was applied in error inescapably encompassed an <u>Alleyne</u> claim regarding the mandatory minimum.  As the government says he should have done, Pizarro cited <u>Apprendi</u> to support this argument.  Hence, under the standard set out by the government itself, Pizarro raised his <u>Alleyne</u> claim on appeal in his opening brief.[6]

Moreover, in his supplemental brief filed after oral argument, Pizarro specifically characterizes his claim as one under <u>Alleyne</u>.  Under our precedent on <u>Apprendi</u>, Pizarro's supplemental brief alone would have been sufficient to raise the <u>Alleyne</u> claim.  <u>See</u> <u>United States</u> v. <u>LaFreniere</u>, 236 F.3d 41, 48 (1st Cir. 2001) (finding that <u>Apprendi</u> issue was "properly submitted for disposition" where "we extended an invitation to LaFreniere and the government to supplement their briefs addressing the possible relevance of <u>Apprendi</u>").  Hence, we reject the government's position in its supplemental brief that Pizarro's "<u>Alleyne</u> claim is potentially waived" on appeal.

Under <u>Apprendi</u> and now <u>Alleyne</u>, each of the subsections of 21 U.S.C. § 841(b)(1), with its associated drug quantities and

_____

[6] As the government itself implicitly recognizes, Pizarro could not have cited <u>Alleyne</u> as authority in his opening brief because it was filed before <u>Alleyne</u> was decided.

sentencing ranges, is a separate crime. Indeed, the Supreme Court has so held. Citing Alleyne and Apprendi, the Supreme Court in Burrage v. United States, 134 S. Ct. 881 (2014), explained that because an aggravating element in § 841(b)(1) -- that death results from the use of the distributed drug -- "increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt." Burrage, 134 S. Ct. at 887 (citing Alleyne, 133 S. Ct. at 2162-63; Apprendi, 530 U.S. at 490).[7] Burrage concluded that a violation of § 841(a)(1), without a finding on the "death results" aggravating element, is a lesser-included offense of the aggravated offense that includes the "death results" element under § 841(b)(1). 134 S. Ct. at 887 n.3. See also United States v. Pena, 742 F.3d 508, 517, 519 (1st Cir. 2014) (same). Just as the "death results" element makes the distribution of drugs where death results a separate crime from the distribution of drugs without a death resulting, drug quantity in § 841(b)(1) creates aggravated conspiracy and possession offenses.

Under Alleyne, the operative question for a drug conspiracy is whether it is the individualized drug quantity that is a "fact that increases the mandatory minimum" sentence, Alleyne, 133 S. Ct. at 2155. We have already answered that question in United States v. Colón-Solís, 354 F.3d 101 (1st Cir. 2004), where

---

[7] Like the aggravating element of drug quantity, "death results" is a distinct aggravating element in § 841(b)(1).

-14-

we held that a mandatory minimum "is made potentially available by a finding that the conspiracy as a whole handled (or at least contemplated) the necessary triggering amount," but a mandatory minimum "cannot be applied in [a particular coconspirator's] case without an individualized finding that the triggering amount was attributable to, or foreseeable by, him." Id. at 103.[8] Colón-Solís was decided prior to Alleyne; therefore, after Colón-Solís, that individualized finding was made by the sentencing judge. However, following the Supreme Court's decision in Alleyne, the drug quantity that triggers the mandatory minimum for a 21 U.S.C. § 846 conspiracy, like the drug quantity that triggers the statutory maximum under Apprendi, must now be found by a jury beyond a reasonable doubt.[9] But, those quantities serve different purposes:  while it is the conspiracy-wide quantity that governs the statutory maximum, Casas, 425 F.3d at 66 n.58, it is the individualized quantity, i.e., the quantity that is foreseeable to

---

[8] Casas itself recognized this principle:  "In the absence of such an individualized finding, the drug quantity attributable to the conspiracy as a whole cannot automatically be shifted to the defendant." Casas, 425 F.3d at 57-58 (quoting Colón-Solís, 354 F.3d at 103).

[9] In United States v. Paladin, 748 F.3d 438 (1st Cir. 2014), the defendant also made the argument that, after Alleyne, Colón-Solís required the jury to find an individualized drug quantity triggering a mandatory minimum, but it was unnecessary for us to decide the issue in that case. See id. at 452-53 ("Paladin urges a collective reading of Colón-Solís and Alleyne to require that the jury make an individualized finding as to the quantity of drugs attributable to a particular defendant.").

the defendant, that triggers the mandatory minimum, <u>Colón-Solís</u>, 354 F.3d at 103.

Having been indicted for conspiring to possess with intent to distribute 1.4 kilograms of heroin and 9,445 kilograms of cocaine, Pizarro most recently was sentenced on the conspiracy count to 23 1/3 years in prison under 21 U.S.C. § 841(b)(1)(A), which applies a mandatory minimum sentence of ten years imprisonment. Pizarro is correct, however, that the jury did not make a finding with respect to the quantity of drugs in the conspiracy foreseeable to him.[10] Indeed, we have already held that to be the case: "We wish to clarify that the jury verdict of guilty did not determine the amount of drugs attributed to each defendant." <u>Casas</u>, 425 F.3d at 65 n.56. Therefore, <u>Alleyne</u> error occurred in Pizarro's case in the conspiracy conviction.

There was also <u>Alleyne</u> error in Pizarro's possession conviction. He was indicted for possession with intent to distribute eighty-one kilograms of cocaine and, as with the conspiracy count, was sentenced on the possession count to 23 1/3 years of imprisonment under § 841(b)(1)(A), carrying the ten-year mandatory minimum. However, the jury did not make the requisite finding of drug quantity for that sentence. In fact, the jury was instructed that quantity was irrelevant: "The United States is not

_____

[10] Pizarro's trial occurred years before the Supreme Court decided <u>Alleyne</u>; hence, there was no precedent at the time requiring the jury to make the individualized drug quantity finding on the conspiracy count.

required to prove that the amount or quantity was as charged in the indictment. It need only prove beyond reasonable doubt that there was a measurable amount of the controlled substance."[11]

Henceforth, under Alleyne and Apprendi, the jury must find the mandatory-minimum and statutory-maximum triggering elements. In a drug conspiracy or possession conviction with a mandatory minimum and statutory maximum based on drug quantity, the jury must find those requisite drug quantities.[12] For example, for a cocaine conspiracy conviction under § 841(b)(1)(A), which imposes a mandatory minimum of ten years and a statutory maximum of life imprisonment, the jury must now find that the defendant (1) conspired, § 846; (2) knowingly or intentionally to distribute

---

[11] Again, this instruction reflected the state of the law at that time.

[12] On the other hand, where the mandatory minimum and statutory maximum do not depend on drug quantity, the court, without any jury finding, may make its own drug quantity findings for sentencing purposes. For example, during sentencing for a conviction under § 841(b)(1)(C), where the indictment had not specified the quantity of cocaine or heroin or only charged small amounts, a district court may make an individualized drug quantity finding for a conspiracy charge (and a drug quantity finding for a possession charge) by a preponderance of the evidence to determine the advisory Guidelines sentence. See Ramírez-Negrón, 751 F.3d at 48-49 (recognizing that the district court may make drug quantity findings by a preponderance of the evidence to calculate an advisory Guidelines sentence for a § 841(b)(1)(C) offense). After calculating that advisory Guidelines sentence, the district court must then use its discretion to impose a sentence within the statutory sentencing range mandated by the jury's verdict. If, for a conviction under § 841(b)(1)(C), the court determines that the advisory Guidelines sentence is greater than twenty years, § 841(b)(1)(C)'s statutory twenty-year maximum nevertheless caps any sentence that the district court can give.

cocaine, § 841(a)(1); (3) in a conspiracy that involved a total of five kilograms or more of cocaine, § 841(b)(1)(A); <u>Apprendi</u>, 530 U.S. at 490; (4) where at least five kilograms of cocaine were foreseeable to the defendant, § 841(b)(1)(A); <u>Alleyne</u>, 133 S. Ct. at 2155; <u>Colón-Solís</u>, 354 F.3d at 103.[13]  For a possession conviction under § 841(b)(1)(A), a crime that by its nature only assesses the conduct of an individual, rather than the conduct of co-conspirators, the jury must find that the defendant (1) knowingly or intentionally possessed with intent to distribute, § 841(a)(1); (2) at least five kilograms of cocaine, § 841(b)(1)(A); <u>Apprendi</u>, 530 U.S. at 490; <u>Alleyne</u>, 133 S. Ct. at 2155.[14]

---

[13] In the case of a cocaine conspiracy, if the jury makes the required threshold findings of at least five kilograms, but does not indicate a specific quantity, and the district court chooses to sentence above the mandatory minimum, the court must make an individualized drug quantity finding by a preponderance of the evidence.  The court would have to find the specific quantity of cocaine foreseeable to the defendant to determine the recommended sentence under the Sentencing Guidelines.  <u>See</u> <u>Colón-Solís</u>, 354 F.3d at 103.  That fact-finding may require credibility assessments for any witnesses on whose testimony the court relies.  <u>See</u> <u>Correy</u>, 570 F.3d at 380-81.  In its discretion, the court will then impose a sentence within the statutory range.

[14] As with a conspiracy conviction, if the jury makes the required threshold finding of at least five kilograms for a cocaine possession count, but does not indicate a specific quantity, and the district court chooses to sentence above the mandatory minimum, it must make a drug quantity finding by a preponderance of the evidence to determine the recommended sentence under the Guidelines.  The court will then use its discretion to impose a sentence within the statutory range.

**D.  The Nature of _Alleyne_ Error**

There are different forms of _Alleyne_ error that can lead to a sentence, imposed after a jury trial, involving the improper application of a mandatory minimum without the requisite jury finding.  One form of _Alleyne_ error is analyzed as a trial error, another as a sentencing error.  The nature of the _Alleyne_ error affects the remedy that might be available to a defendant.

In _Alleyne_ itself, the error was of the sentencing variety.  The jury verdict form in _Alleyne_ had included the applicable minimum-triggering element in that case (brandishing of a firearm) as an optional finding that the jury should consider.  The jury instead "indicated on the verdict form that Alleyne had '[u]sed or carried a firearm during and in relation to a crime of violence,' but did not indicate a finding that the firearm was '[b]randished.'"  _Alleyne_, 133 S. Ct. at 2156.  The trial court, however, applied the mandatory minimum based on its own finding by a preponderance of the evidence that the defendant had brandished the weapon.  _Id._  Thus, the error in _Alleyne_ was confined to sentencing, where the district court made a finding on an aggravating element that was presented to and rejected by the jury.  In essence, the trial judge sentenced Alleyne for "a separate, aggravated offense," _id._ at 2162, that the jury had itself decided not to find beyond a reasonable doubt.  _See_, _e.g._, _Price_ v. _Georgia_, 398 U.S. 323, 328-29 (1970) (holding that where jury was

-19-

instructed on both a greater offense and lesser-included offense and the jury convicted on the lesser-included offense, the double jeopardy provision prohibited retrial on the greater offense). Therefore, the Supreme Court vacated Alleyne's sentence and "remand[ed] for resentencing consistent with the jury's verdict," id. at 2164, which would mean that Alleyne should only be sentenced for the offense of using or carrying a firearm in relation to a crime of violence.

On the other hand, where a defendant was indicted for and convicted of an aggravated offense and the jury was not instructed on the element triggering the statutory mandatory minimum sentence, but that minimum was nevertheless applied at sentencing, the Alleyne error is analyzed as an instructional error, occurring at trial. The Supreme Court's decision in Washington v. Recuenco, 548 U.S. 212 (2006), dictates this conclusion. There, the jury had found the defendant guilty of assault while armed with a deadly weapon, but the judge sentenced the defendant, over his objection, for assault while armed with a firearm, a separate, aggravated offense subject to a greater statutory maximum sentence. See id. at 215-216, 225. Unlike in Alleyne, the Recuenco jury had not been given the option of finding the aggravating element, i.e., that the deadly weapon was a firearm. Id. The trial court, therefore, committed Apprendi error by imposing a mandatory statutory

-20-

sentencing enhancement without a jury finding on the requisite aggravating element of a firearm.[15]

The Supreme Court held that the "[f]ailure to submit a sentencing factor to the jury," which increases the statutory maximum, i.e., the Apprendi error, was "indistinguishable" from the "failure to submit an element to the jury" that occurred in Neder v. United States, 527 U.S. 1 (1999).[16] Recuenco, 548 U.S. at 220, 222. In Neder, the district court erred by refusing to instruct the jury on "materiality" as an element of tax fraud. Neder, 527 U.S. at 4. Recuenco explained that "[b]ecause Neder's jury did not find him guilty of each of the elements of the offenses with which he was charged, its verdict is no more fairly described as a complete finding of guilt of the crimes for which the defendant was sentenced than is the verdict here." Recuenco, 548 U.S. at 221. Hence, in a case where the jury was not instructed on an

_____

[15] The Supreme Court characterized the Apprendi error in Recuenco as Blakely error. Recuenco, 548 U.S. at 216. As the Court explained, "In Blakely [v. Washington, 542 U.S. 296 (2004)], we clarified that 'the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" Recuenco, 548 U.S. at 216 (quoting Blakely, 542 U.S. at 303).

[16] The element that increased the statutory maximum in Recuenco is more properly termed an "aggravating element" than a "sentencing factor." The Supreme Court explained in Apprendi that the term "sentencing factor" "appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense." Apprendi, 530 U.S. at 494 n.19. Hence, we refer to a factor that increases the statutory maximum or minimum as an "aggravating element," as opposed to a "sentencing factor."

aggravating element and thus necessarily did not make a finding on that element, the Supreme Court explicitly equated the Apprendi error of imposing that element's associated statutory sentencing enhancement with the Neder failure to instruct on an element of the offense. Likewise, even before the Supreme Court decided Recuenco, we too had analyzed Apprendi error as a failure to instruct the jury. See, e.g., United States v. Pérez-Ruiz, 353 F.3d 1, 17 (1st Cir. 2003) (analyzing an Apprendi error in a drug conspiracy case as "the failure to submit the necessary drug type and quantity questions to the jury").

Just as an Apprendi error can result from the failure to instruct on the maximum-triggering element, an Alleyne error can result from the failure to instruct on the minimum-triggering element. Indeed, the Alleyne errors in Pizarro's case resulted from such instructional omissions. The district court did not instruct the jury on the individualized drug quantity element of the conspiracy charge or the drug quantity element of the possession charge. Hence, an instructional Alleyne error, like an instructional Apprendi error, is properly reviewed under the Supreme Court's jurisprudence on the failure to instruct on an element of the crime.

The distinction between the Alleyne sentencing error that occurred in Alleyne itself and the Alleyne instructional errors that we have here affects the availability of harmless or plain

-22-

error review.  In a case where the trial court made a finding on an aggravating element that was rejected by the jury (as in Alleyne itself), the standard of review makes no difference.  After Apprendi and Alleyne, if a sentencing court imposes a sentence for an aggravated crime that the jury has considered and rejected, the error will always be plain and such an aggravated sentence must necessarily be vacated.  On the other hand, where the court failed to instruct the jury on an aggravating element (as in Recuenco), the jury never had a chance to make a finding on that element.  In such a situation, either harmless or plain error review (depending on whether the error was preserved) is appropriate to determine whether a reasonable jury necessarily would have found the aggravating element beyond a reasonable doubt.  See United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014); cf. United States v. Cotton, 535 U.S. 625, 631-34 (2002) (applying plain error review to an unpreserved Apprendi error).[17]

---

[17] The writing judge believes that, because each subsection of § 841(b)(1) defines a separate crime, Burrage, 134 S. Ct. at 887 & n.3, a court may not solve a non-harmless (or plain) Alleyne instructional error by taking a mandatory minimum (or the absence of one) from one subsection and a statutory maximum from another. In other words, if the court had found the Alleyne error here non-harmless, the writing judge believes the new sentencing range could not have been zero years to life imprisonment -- i.e., taking the absence of a mandatory minimum from § 841(b)(1)(C) and the statutory maximum of life imprisonment from § 841(b)(1)(A).  He concludes that, under the logic of Burrage, such an approach would amount to legislating a wholly new crime and, hence, a non-harmless (or plain error) failure to instruct on the drug quantity elements would require vacating the conspiracy and possession convictions under § 841(b)(1)(A) carrying the mandatory minima.

**E. Pizarro's Preservation of the <u>Alleyne</u> Error at Sentencing**

Although instructional errors ordinarily must be preserved at the time of trial, our precedent holds that instructional <u>Apprendi</u> errors are preserved even if a defendant does not object until sentencing. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Díaz-Arias</u>, 717 F.3d 1, 25 (1st Cir. 2013). Observing that a party has an obligation to object only to something "inimical to his cause," we have noted that a defendant would have "no interest in ensuring his eligibility for a longer sentence." <u>Pérez-Ruiz</u>, 353 F.3d at 14. Moreover, we have recognized that "a defendant will not know whether there is an <u>Apprendi</u> error until sentencing, and then only if the court considers a sentence above the maximum." <u>United States</u> v. <u>Nelson-Rodriguez</u>, 319 F.3d 12, 47 (1st Cir. 2003). Hence, we have held that a claim of <u>Apprendi</u> error is preserved for appeal if a defendant at sentencing challenges "the imposition or proposed imposition of a term that exceeds the applicable statutory maximum." <u>Pérez-Ruiz</u>, 353 F.3d at 14. In <u>Casas</u>, we also treated <u>Apprendi</u> claims as preserved as long as the defendants had objected at sentencing. <u>Casas</u>, 425 F.3d at 59-60.[18]

---

[18] At least one member of the panel disagrees with our reasoning in <u>Pérez-Ruiz</u>, <u>Nelson-Rodriguez</u>, and their progeny holding that a defendant preserves an <u>Apprendi</u> claim by objecting at sentencing. Under this view, <u>Pérez-Ruiz</u> et al. cannot survive the Supreme Court's recognition that drug quantity -- or any sentencing factor -- is an element of the charged offense. The rationale is that, when the indictment charges an enhanced offense, a defendant can hardly stand by silently (and then later invoke harmless error review) when the instructions fail to include

In its supplemental brief, the government claims the Alleyne error was unpreserved below and applies the plain error test as part of its argument.[19]  As we reported in Casas, "Pizarro objected [at his initial sentencing] that the jury did not make a finding on the issue of drug quantity.  When the district judge asserted that there was no Apprendi issue, Pizarro's counsel responded that '[w]e believe, Your Honor, that there is room in that respect.'"  Casas, 425 F.3d at 59.  We observed that this objection "by its nature raised Apprendi concerns," id. at 60 n.48, which also would have sufficed to raise an Alleyne claim based on the same Sixth Amendment right to a jury trial, see Alleyne, 133 S. Ct. at 2163 & n.5 (noting that "there is no principle or logic to distinguish facts that raise the maximum from those that increase the minimum").  Although Pizarro did not explicitly object on these grounds again at his most recent sentencing hearing (his third), our precedent suggests that, assuming Pizarro did not abandon his original objection, the objection would have preserved

---

appropriate mention of drug quantity any more than the defendant could withhold objection to the omission of any other element (such as mens rea in a murder case that enhances the base level offense). Adopting that view would require our court to revisit our precedents holding otherwise.  In any event, as Pizarro's conviction survives both plain-error and harmless-error review, our result does not depend on whether Pizarro preserved an objection to the Alleyne error.

    [19] Even though Alleyne had not been decided yet, if there had been no objection below, an Alleyne claim would have been reviewed for plain error.  See United States v. Harakaly, 734 F.3d 88, 94 (1st Cir. 2013).

the <u>Alleyne</u> claim for our review now.  <u>See</u> <u>United States</u> v.
<u>Amirault</u>, 224 F.3d 9, 14 (1st Cir. 2000) (holding that claim was
preserved for subsequent appeal by objection at original sentencing
hearing).  We need not resolve whether Pizarro in fact preserved
his <u>Alleyne</u> claim for this appeal, however, as we can conclude that
the error was in any event harmless.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v.
<u>Soto-Beníquez</u>, 356 F.3d 1, 49 (1st Cir. 2004) ("We have already
determined that any <u>Apprendi</u> error as to drug amount or type would
be harmless; a fortiori, no plain error occurred.").  We therefore
presume, without deciding, that harmless error review applies here.

**F.  Harmless Error Review for Instructional Errors**

The Supreme Court addressed harmless error review for an
omitted element in <u>Neder</u> v. <u>United States</u>, 527 U.S. 1 (1999),
describing the inquiry as whether it is "clear beyond a reasonable
doubt that a rational jury would have found the defendant guilty
absent the error."  <u>Id.</u> at 18.  The Court held that "[i]n this
situation, where a reviewing court concludes beyond a reasonable
doubt that the omitted element was uncontested and supported by
overwhelming evidence, such that the jury verdict would have been
the same absent the error, the erroneous instruction is properly
found to be harmless."  <u>Id.</u> at 17.  The concurrence by the writing
judge asserts that, based on the Court's statements in <u>Neder</u> and
its prior precedent, the omission of an element is harmless only
when the reviewing court draws two conclusions beyond a reasonable

-26-

doubt: the element is uncontested, and the element is supported by overwhelming evidence. In this case of instructional Alleyne error, the concurrence takes the position that the omission would not be harmless if the defendant had asserted either below or on appeal that a properly instructed jury could have found in his favor on the omitted element. The panel need not decide whether this view of the law is correct because, in this case, we conclude beyond a reasonable doubt both that Pizarro has never contested the omitted drug quantity elements and that they were supported by overwhelming evidence.

In its supplemental brief, the government argues that Pizarro conceded that he was responsible for at least five kilograms of cocaine. We do not examine whether Pizarro affirmatively admitted that threshold quantity, however, because we conclude that, like Neder, Pizarro has not contested the omitted elements. At his first sentencing, Pizarro asserted only that the jury did not make any drug quantity findings; he did not argue that a contrary finding on the elements was possible. Moreover, Pizarro's argument on appeal regarding the failure to instruct on the drug quantity elements "establishes only that there was Alleyne error; it says nothing about whether that error was harmless." See United States v. Harakaly, 734 F.3d 88, 95-96 (1st Cir. 2013). Finally, while Pizarro did make credibility arguments at sentencing and on appeal to challenge the court's drug quantity determination

at sentencing, there is no indication that Pizarro's argument called into question anything other than the sentencing court's conclusion that Pizarro was responsible for more than 150 kilograms of cocaine. Pizarro did not argue that the jury that convicted him could have found him responsible for less than five kilograms of cocaine.[20] Hence, Pizarro did not contest the omitted drug quantity elements.

The government also argues that overwhelming evidence introduced at Pizarro's trial established that Pizarro was responsible for at least five kilograms of cocaine, the requisite drug quantity for § 841(b)(1)(A)'s ten-year mandatory minimum. A reviewing court may conclude beyond a reasonable doubt that the omitted element was "supported by overwhelming evidence" if the evidence was of such a significant quantity and quality that it "incontrovertibly establishes" the element. Neder, 527 U.S. at 16-17; see also United States v. Bailey, 270 F.3d 83, 89 (1st Cir. 2001) (finding that evidence was not "overwhelming" because "[w]hile a judge could permissibly find those facts by a preponderance of the evidence, and a jury could permissibly find them beyond a reasonable doubt, it is not so clear that a reasonable jury must have found them beyond a reasonable doubt"); Pérez-Ruiz, 353 F.3d at 18-19 (similar). Even where the

---

[20] We do not mean to suggest that a credibility argument, explaining how a finding of less than five kilograms was possible, could not have "contested" the omitted elements, as the term is used in Neder.

government's evidence on the omitted element is "strong," that evidence is not overwhelming if competing evidence is "not inherently incredible." United States v. Prigmore, 243 F.3d 1, 22 (1st Cir. 2001) (citing Neder, 527 U.S. at 19).

In this case, overwhelming evidence supports the requisite findings of at least five kilograms. The jury found Pizarro guilty of possession with intent to distribute cocaine, and Pizarro explained in his opening brief that DEA Agent Jay Stoothoff testified that 81 kilograms of cocaine was the amount seized. See also Casas, 425 F.3d at 29, 54 n.39 (explaining that two DEA agents identified Pizarro as one of the suspects participating in the March 21, 1994 airport transaction from which the agents secured four suitcases containing the 81 kilograms of cocaine). At Pizarro's first sentencing hearing, Pizarro's counsel stated that the 81 kilograms had actually been presented in court. Further, Pizarro's own description of the evidence includes multiple witnesses testifying that Pizarro was involved in distributing quantities of cocaine well over five kilograms. In fact, evidence showed that "Pizarro coordinated the shipment of drugs through the airport in Puerto Rico," Correy, 570 F.3d at 375, and "seven cooperating witnesses . . . identified Pizarro as a member of the conspiracy and described his role and specific activities therein," Casas, 425 F.3d at 54 n.39. Hence, we conclude beyond a reasonable

doubt that the omitted element was "supported by overwhelming evidence." Neder, 527 U.S. at 17.

In sum, because we have found the omitted element of drug quantity to be both uncontested and supported by overwhelming evidence, we need not decide whether the absence of a contest is required in order to find harmless error. In the circumstances of this case, the jury verdict would have been the same absent the error. We therefore find the error harmless beyond a reasonable doubt.[21]

## III.

We thus turn to Pizarro's claims of error related to his most recent sentence. Independent of the Alleyne errors, which implicated his convictions, Pizarro argues that the district court ignored our prior remand order by refusing to engage in credibility assessments with respect to the conspiracy drug quantity attributable to him and by refusing to consider his arguments

---

[21] In addition to his Alleyne arguments, Pizarro claims that his "statutory and constitutional rights to a speedy trial and sentencing were denied as a result of the commencement of trial 41 months after [his] indictment and the further delay of sentencing until years after." As the government properly points out, Pizarro has not developed this argument beyond this one sentence; therefore, the argument is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Furthermore, as to pretrial delay, we have already held that there was no Speedy Trial Act or Sixth Amendment violation. See Casas, 425 F.3d at 30-36.

regarding the firearm enhancement.  We agree, and hence we must

vacate his sentence.[22]

## A.  Individualized Drug Quantity

During the first two sentencings, the district court

concluded that the jury's guilty verdict resolved any credibility

issues about the testimony relating to the drug quantity

foreseeable to Pizarro.  In both Casas and Correy, we explained

that the district court was wrong, see Casas, 425 F.3d at 64 n.56;

Correy, 570 F.3d at 378-79, and we twice ordered the district court

to conduct credibility assessments, "based on the whole record,"

see Correy, 570 F.3d at 381, when calculating individualized drug

quantity.

Pizarro pointed the district court to our decisions when

arguing that credibility assessments were required for all

witnesses on whose testimony the court was relying for its

individualized drug quantity determination.  In Correy, we

explained:

> On remand, the appellants developed arguments attacking
> the credibility and reliability of other witnesses.
> Though our discussion in the prior opinion was focused on
> Martínez and Pérez, equally applicable to all witnesses
> was the rationale for requiring independent credibility
> assessments by the sentencing judge . . . . [A]fter our
> remand, the district court should have made credibility

---

[22] This next resentencing will be Pizarro's fourth sentencing.
As explained above, Pizarro was initially sentenced in 2002 to life
imprisonment.  After his first appeal, Pizarro was resentenced in
2006 to 30 years in prison.  After his second appeal, Pizarro was
resentenced in 2012 to 23 1/3 years in prison.

-31-

determinations as necessary to resolve the facts in dispute.

570 F.3d at 379 (emphasis added). Nevertheless, in the 2012 resentencing that is the subject of this appeal, the district court again took the position that "credibility is not an issue" to be considered for any witnesses other than Thomas Martínez and Israel Pérez-Delgado. Therefore, the district court relied on testimony from other witnesses without conducting any credibility assessments. This improper course, now repeated, directly contravened Correy's explicit order.

The government claims that the following statement from the district court during the 2012 resentencing indicates that it did perform the required credibility determinations:

> You point out [sic] to cross examination, to some impeachment, other testimony, but I have to part from that premise. There were convictions in this case as to your client. Some others may have been acquitted, other matters, but if you look at the global [sic] and summarize the testimony, if you look at it globally I understand by the preponderance of the evidence it supports that drug finding.

(Emphasis added.) Contrary to what the government posits, the most natural reading of this passage, particularly in light of the district court's explicit statement that "credibility is not an issue" for witnesses other than Martínez and Pérez-Delgado, is that yet again "the district court did not heed our instruction, but rather persisted in its view that the jury verdict was controlling." Correy, 570 F.3d at 379.

-32-

"[W]here the district court has expressly made clear that it is not conducting a credibility inquiry, it would be disingenuous of us to act otherwise." Id. at 381. Therefore, we must vacate Pizarro's sentence and remand for resentencing under § 841(b)(1)(A). The district court's credibility assessments must be based on the whole record for all witnesses on whose testimony the court has relied to calculate the conspiracy drug quantity foreseeable to Pizarro. We understand the particular burden that credibility assessments impose on the district court under the circumstances here; however, that burden does not permit a sentence that does not fully comport with all legal requirements.

## B. Firearm Enhancement

Pizarro also asserts that the district court erred by refusing to consider his arguments refuting the two-point firearm enhancement. We agree. In Correy, we unambiguously asserted:

> Pizarro should have a real opportunity to challenge this inference [that the conspiracy's use of weapons would be foreseeable to Pizarro] by arguing the question of foreseeability to a fact-finder willing to consider his arguments. Thus, on remand, . . . [h]e will be able to make factual arguments attacking credibility and foreseeability, which the court will consider and resolve.

Correy, 570 F.3d at 401. Nevertheless, the district court refused to hear Pizarro's arguments concerning the firearm enhancement, incorrectly asserting numerous times that consideration of the enhancement was "outside the scope of the remand order."

The government attempts to salvage the district court's application of the enhancement by referring to the court's statement that "[a]gain I mentioned that I was not going to disturb that enhancement, but even if I were to make it anew, counsel made the arguments, but I understand there has been testimony in this particular case for example and again this gentleman has not been acquitted of any Counts, other defendants have." Contrary to the government's argument, it appears that, as with its refusal to conduct the credibility determinations for individualized drug quantity, the district court relied on the jury verdict instead of conducting the inquiry we directed. While the court did point to witness testimony regarding the "foreseeability of possession of firearms" to Pizarro, the court erred by not considering Pizarro's arguments regarding the enhancement or performing the credibility determinations that we said were necessary. The court must consider Pizarro's arguments on remand.

## C. Remaining Issues

### 1. PSR

With respect to both the individualized drug quantity and the foreseeable use of firearms, Pizarro claims that the most recent PSR repeated the deficiencies that we ordered corrected in our prior decisions. We disagree.

Previously, we directed that "the sentencing court should, on remand, provide Pizarro with a PSR which identifies

-34-

specific drug quantities." Correy, 570 F.3d at 400. We explained that, "[a]rmed with this PSR, Pizarro will be given a genuine opportunity to argue that the testimony was incredible, that it does not support the incriminating inference, and/or that it was not foreseeable." Id. With respect to the firearm enhancement, we directed that the PSR identify trial transcript portions that support any conclusion that he possessed weapons or that weapon possession was foreseeable to him. Id. at 401. We also "ordered that the PSR include references to the trial record." See id. at 384.

As we ordered, the Second Amended PSR filed on July 7, 2011 included in paragraphs 92 through 102 a synopsis of testimony with respect to specific drug quantities that arguably were foreseeable to Pizarro. With respect to a firearm, paragraph 92 specifically cited testimony that Pizarro received a firearm through the mail in August 1993. Hence, the Second Amended PSR satisfied our order in Correy.

### 2. Drug Type

Pizarro argues that because the jury instructions on conspiracy did not include the type and quantity of drugs, the jury could have found him guilty only of conspiracy to distribute heroin, possibly producing a lower base offense level under the Guidelines. We disagree. The superseding indictment charged that the conspiracy involved "approximately one thousand four hundred

grams of heroin . . . <u>and</u> approximately nine thousand four hundred forty five (9,445) kilograms of cocaine." (Emphasis added.) "Because those drug quantities and types were joined by the conjunctive term 'and' rather than the disjunctive 'or,' there was no ambiguity about the crime charged." <u>Soto-Beníquez</u>, 356 F.3d at 48-49. Further, the district court instructed the jury numerous times that the charged conspiracy involved heroin "and" cocaine, including when summarizing the conspiracy charge, when reading the indictment, and when describing the proof of the conspiracy itself and the element of intent that would be necessary for a guilty verdict.

### 3. Other Sentencing Arguments

Pizarro makes a host of other sentencing arguments, including that the sentencing court "was not familiar with the entire record," improperly considered 18 U.S.C. § 3553 factors, and should have granted certain downward departures and variances. Since we are already vacating Pizarro's sentence and ordering resentencing, we need not reach Pizarro's alternate claims. <u>See</u> <u>Correy</u>, 570 F.3d at 401 (citing <u>United States</u> v. <u>Vidal-Reyes</u>, 562 F.3d 43, 48 (1st Cir. 2009)).

### IV.

In conclusion, we hold that the district court committed instructional <u>Alleyne</u> errors by failing to charge the jury on the essential element of individualized drug quantity for the

-36-

conspiracy count and the essential element of drug quantity for the possession count before applying the § 841(b)(1)(A) statutory sentencing range that included a mandatory minimum sentence on each count. Nevertheless, because we conclude beyond a reasonable doubt that the errors did not contribute to the results obtained, we find the errors harmless.

However, since the district court ignored our order to conduct credibility assessments when calculating individualized drug quantity, and to consider Pizarro's firearm enhancement arguments, we vacate Pizarro's sentence and remand for resentencing. When resentencing Pizarro under § 841(b)(1)(A), the district court must (1) conduct credibility determinations, based on the whole record, for all witnesses on whose testimony it has relied in calculating an individualized drug quantity; (2) consider Pizarro's arguments regarding a firearm enhancement; and (3) consider, as usual, any additional sentencing arguments that Pizarro has not waived and that we have not already resolved and "such new arguments or new facts as are made newly relevant by [our] decision -- whether by the reasoning or by the result." United States v. Ticchiarelli, 171 F.3d 24, 32 (1st Cir. 1999) (internal quotation mark omitted).

Pizarro was arrested in 1996 and tried in 1999. Hence, as we consider this third direct appeal, he has been in custody for nearly two decades without a resolution of his case. Pizarro has

already been sentenced three times, and we are now remanding for a fourth sentencing proceeding. The district court arrived at the last concurrent sentence of 23 1/3 years of imprisonment and five years of supervised release after calculating individualized drug quantity and applying a firearm enhancement, without weighing Pizarro's potentially mitigating credibility arguments. Our vacatur and remand are for the purpose of correcting the district court's failure to evaluate those arguments, and we therefore see no justification for the court to impose a longer sentence on remand than it deemed appropriate without considering credibility. We conclude that it is just under these circumstances to direct the district court, after considering Pizarro's arguments, to impose a sentence no longer than the concurrent sentence of 23 1/3 years of imprisonment and five years of supervised release. See 28 U.S.C. § 2106. We intimate no view on whether the sentence should be lower.

We therefore affirm Pizarro's convictions, vacate his sentence, and remand for resentencing consistent with this opinion.

**So ordered.**

**– Concurring Opinions Follow –**

**LIPEZ, Circuit Judge, concurring**. In analyzing the complex issues in this case, I became aware of the significant inconsistency in the way courts have reviewed for harmlessness the failure to instruct on an element of a crime. I write separately to express my concern regarding this inconsistency, which exists within my circuit and in other courts, and the potentially unconstitutional applications of Neder v. United States, 527 U.S. 1 (1999), that have resulted from it. Given that the Sixth Amendment right to a jury trial is at stake, I urge the Supreme Court to clarify the line between an unconstitutional, directed guilty verdict and a harmless failure to instruct on an element.

## I.

A constitutional error is harmless where the reviewing court concludes "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained,'" i.e., "that the jury verdict would have been the same absent the error." Neder, 527 U.S. at 15, 17 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)).[23] Neder expressly states that a "jury verdict would

---

[23] My colleague incorrectly states in his concurrence that I have rejected the Chapman harmless error standard as applicable to this case. To the contrary, I fully embrace use of the Chapman standard here. My view, as elaborated below, is that the Chapman standard has a unique application where the error asserted is the failure to obtain a jury verdict on an element of the crime.

The misunderstanding of my view is reflected in the hypothetical offered in Section VI of the responding concurrence. As I interpret Neder, that hypothetical could not happen. The proposed scenario assumes that a reviewing court could conclude beyond a reasonable doubt that the jury verdict would have been the

have been the same absent" a failure to instruct on an element, "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested <u>and</u> supported by overwhelming evidence." <u>Neder</u>, 527 U.S. at 17 (emphasis added). Hence, since we have concluded beyond a reasonable doubt that the threshold five kilogram cocaine quantities were <u>both</u> uncontested by Pizarro and supported by overwhelming evidence, <u>Neder</u> mandates our conclusion here that the errors under <u>Alleyne</u> v. <u>United States</u>, 133 S. Ct. 2151 (2013), were harmless.

<u>Neder</u>, however, did not unequivocally answer whether its two-part formulation for finding an omitted element harmless in Neder's case -- that the element was both uncontested <u>and</u> supported by overwhelming evidence -- was merely descriptive of the circumstances in <u>Neder</u> itself or also prescriptive for any finding of harmlessness where an element was omitted. In <u>Neder</u>, the jury instructions for the charge of filing a false income tax return did not include the element of materiality. <u>Neder</u>, 527 U.S. at 6. The evidence showed that Neder failed to report over five million dollars in income on his tax returns. <u>Id.</u> at 16. The Court

---

same absent the error even where the defendant contested the omitted element. Under my reading of Supreme Court precedent, however, a court could only reach such a conclusion about the jury's verdict if it determined that the evidence on the omitted element was overwhelming and that the element was uncontested.

Importantly, and also contrary to my colleague's representations, my view does not derive "almost entirely from a single quote from <u>Neder</u>." It is based on both a careful analysis of the <u>Neder</u> decision and on longstanding principles developed in the Court's precedent on directed guilty verdicts.

described two available standards for materiality[24] and concluded that "[u]nder either of these formulations, no jury could reasonably conclude that Neder's failure to report substantial amounts of income on his tax returns was not 'a material matter.'" Id. The Court then explained:

> The failure to report such substantial income incontrovertibly establishes that Neder's false statements were material to a determination of his income tax liability. The evidence supporting materiality was so overwhelming, in fact, that Neder did not argue to the jury -- and does not argue here -- that his false statements of income could be found immaterial.

Id. at 16-17.

The Court ultimately declared its holding using the formulation quoted above, concluding that "[i]n this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." Id. at 17. Notwithstanding the conjunctive "and" linking "uncontested" and "supported by overwhelming evidence,"[25]

___

[24] Under one formulation, "a false statement is material if it has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." Neder, 527 U.S. at 16 (alteration in original) (internal quotation marks omitted). Under the other definition, "any failure to report income is material." Id. (internal quotation marks omitted).

[25] My concurring colleague asserts that I have unduly relied on the conjunctive "and" as used by the Supreme Court in this passage from Neder while ignoring the arguably inconsistent parallel use of that word later in the opinion. While the

courts have taken inconsistent positions on whether a defendant's contest of an omitted element, even one supported by overwhelming evidence, renders the omission non-harmless. In addition, Neder left unresolved the related question of what a defendant is required to do to "contest" the omitted element under Neder. In my view, Neder, especially when analyzed against the backdrop of the Supreme Court's cases regarding directed guilty verdicts, requires that an omitted element be uncontested in order to be found harmless. However, this circuit has not uniformly approached the question, and there is significant inconsistency among the circuits and state courts.

## A. The Debate over "Uncontested"

### 1. Inconsistency in this Circuit

In certain cases, our harmlessness inquiry has examined both whether the omitted element was uncontested and whether it was supported by overwhelming evidence. See, e.g., United States v. Harakaly, 734 F.3d 88, 95-96 (1st Cir. 2013) (finding omission harmless where overwhelming evidence supported omitted element of

_____

conjunctive formulation I describe here is important to my analysis, my view of the harmless error analysis in Neder is based on the entire opinion construed against the backdrop of the Supreme Court's precedent on directed guilty verdicts.

Moreover, in contrast to the Court's statement of its holding as quoted here, the later use of "and" highlighted by my colleague is explicitly offered as an "example." See Neder, 527 U.S. at 19. Nonetheless, I have acknowledged that Neder's language is susceptible to my colleague's reading despite my view that, in light of Supreme Court precedent, that reading cannot be correct.

threshold drug quantity and defendant, instead of contesting that threshold quantity, "acknowledged responsibility for a quantity of drugs that far exceeds the triggering amount"); United States v. Zhen Zhou Wu, 711 F.3d 1, 20 (1st Cir. 2013) ("But here, the defendants did contest the prosecution's claim[,] . . . thus making this case different from Neder."); United States v. Nelson-Rodriguez, 319 F.3d 12, 48-51 (1st Cir. 2003) (finding preserved Apprendi errors harmless after concluding that defendants did not contest omitted element and that overwhelming evidence supported element); United States v. Bailey, 270 F.3d 83, 89 (1st Cir. 2001) ("The error cannot be harmless where, as here, the defendant has contested the omitted element and the evidence is sufficient to support a contrary finding.").

Our cases that have performed this dual inquiry, however, have not made clear whether a defendant's contest of an omitted element precludes a finding of harmlessness, or whether such a contest is merely relevant to the harmlessness inquiry, but not determinative of it. In United States v. Prigmore, 243 F.3d 1 (1st Cir. 2001), we indeed contemplated that a defendant's contest of an omitted element might itself preclude a finding of harmlessness. See id. at 22 ("Unlike Neder, the government's evidence . . . was contested by the defendants; as we have stated, defendants introduced testimonial evidence [to the contrary] . . . . Given Neder's repeated emphasis on the 'uncontested' nature of the

-43-

evidence of materiality in that case, the contested nature of the . . . evidence in this case might well suffice to distinguish it from Neder in and of itself." (citation omitted)).  However, we did not need to decide the question because the contested element was not supported by overwhelming evidence.  Id.

Conversely, other cases in this circuit seem to have equated harmlessness solely with overwhelming evidence.  See, e.g., United States v. Soto-Beníquez, 356 F.3d 1, 48 (1st Cir. 2004) ("In determining whether an Aprendi error is harmless, the determinative question is whether the evidence overwhelmingly establishes the amount of drugs distributed by the conspiracy as a whole."); United States v. Pérez-Ruiz, 353 F.3d 1, 18 (1st Cir. 2003) (citing Nelson-Rodriguez, 319 F.3d at 45-49, and Bailey, 270 F.3d at 89 -- cases that had themselves considered whether the omitted element was uncontested -- for the principle that "[i]n drug-trafficking cases involving Apprendi errors, we sometimes have treated the presence of 'overwhelming evidence' of the requisite drug types and quantities as a proxy for harmlessness").

Still other cases appear to have taken an ambivalent stance, focusing the analysis primarily on whether overwhelming evidence supported the omitted element, but also considering whether the element was uncontested.  See, e.g., United States v. Martinez-Medina, 279 F.3d 105, 121-22 (1st Cir. 2002) (explaining that "[n]either appellant seriously denies that the conspiracy

involved at least five kilograms of cocaine" but also that "it is settled that an Apprendi error can be harmless where the evidence overwhelmingly establishes the minimum drug quantity needed to justify a higher statutory maximum").

## 2. Inconsistency Among Other Circuits

This circuit's internal inconsistency mirrors the inter-circuit conflict on the interpretation of Neder. I cite cases from the Ninth, Eleventh, Second, and Fourth Circuits as examples.

Earlier this year, the Ninth Circuit, applying the Neder standard, held that an Apprendi error was not harmless beyond a reasonable doubt because the defendant had contested the omitted element. See United States v. Guerrero-Jasso, 752 F.3d 1186, 1193-95 (9th Cir. 2014). Despite finding the evidence supporting the omitted element to be "somewhat similar" to evidence the court had found to be "overwhelming" in a prior case, the Ninth Circuit held that Guerrero-Jasso's contest of the omitted element precluded a finding of harmlessness beyond a reasonable doubt. Id. at 1194. Further, although Neder stated that a court could not find harmless error "'for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding,'" the Ninth Circuit held that Guerrero-Jasso was not required affirmatively to raise evidence sufficient to support a contrary finding because "[t]he example provided in Neder [was] not the only way a constitutional error can be ruled not harmless; it

[was] one way." Guerrero-Jasso, 752 F.3d at 1195 (quoting Neder, 527 U.S. at 19).

By contrast, the Eleventh Circuit on remand in Neder interpreted the Supreme Court's decision as "not hold[ing] that omission of an element can never be harmless unless uncontested." United States v. Neder, 197 F.3d 1122, 1129 (11th Cir. 1999). Rather, the Eleventh Circuit construed the Supreme Court's statements regarding "uncontested" as "mean[ing] only that the fact materiality was not contested support[ed] the conclusion that the jury's verdict would have been the same absent the error." Id. at 1129 n.6. Hence, the court concluded "whether Neder contested materiality may be considered but is not the pivotal concern." Id. at 1129.

The Second Circuit has taken a different position, holding that under Neder contesting an omitted element does not by itself render the omission non-harmless but requires a multi-step analysis. In the Second Circuit, "'if the evidence supporting the omitted element was controverted, harmless error analysis requires the appellate court to conduct a two-part inquiry, searching the record in order to determine (a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty.'" United States v. Needham, 604 F.3d 673, 679 (2d Cir. 2010) (quoting United

<u>States</u> v. <u>Jackson</u>, 196 F.3d 383, 386 (2d Cir. 1999)).[26]

The Fourth Circuit has in turn expressly rejected the Second Circuit's approach in favor of yet another. In the Fourth Circuit, "if the defendant contested the omitted element, <u>Neder</u> mandates a second inquiry. In that event, we must determine whether the 'record contains evidence that could rationally lead to a contrary finding with respect to that omitted element.'" <u>United States</u> v. <u>Brown</u>, 202 F.3d 691, 701 (4th Cir. 2000) (quoting <u>Neder</u>, 527 U.S. at 19).

---

[26] The Second Circuit has been internally inconsistent in its own stance on <u>Neder</u>, expressing, after <u>Jackson</u>, a belief that there is "some tension between the harmless-error analysis in <u>Neder</u> and our articulation of it in <u>Jackson</u>":

> . . . <u>Neder</u> appears to say that, once the court decides that the defendant offered evidence sufficient to support a finding in his or her favor on the omitted element, the court's error in omitting that element from the jury instruction cannot be deemed harmless, unless, for example, other conclusions by the same jury are the functional equivalent of a finding of the omitted element. <u>Jackson</u>, on the other hand, seems to allow the court to decide on its own whether the jury would have convicted the defendant, even where the evidence can support a finding in the defendant's favor on an omitted element and no functional equivalent of the omitted element has been found by the jury.

<u>Monsanto</u> v. <u>United States</u>, 348 F.3d 345, 350-51 (2d Cir. 2003). Nevertheless, the Second Circuit has recognized it is "bound by <u>Jackson</u>, . . . unless and until that case is reconsidered by our court sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision." <u>Id.</u> at 351.

### 3. Criticism in the State Courts

Several state supreme courts have held that their state constitutions provide a broader jury trial guarantee than <u>Neder</u> recognized in the federal Constitution. <u>See</u>, <u>e.g.</u>, <u>Harrell</u> v. <u>State</u>, 134 So.3d 266, 270-75 (Miss. 2014) (holding under the Mississippi Constitution "that it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element"); <u>State</u> v. <u>Kousounadis</u>, 986 A.2d 603, 616 (N.H. 2009) ("<u>Neder</u>, however, has been widely criticized, and we decline to follow it with regard to our interpretation of the New Hampshire Constitution.").

In addition, at least one state court has suggested that <u>Neder</u>'s application of harmless error analysis to cases where the jury did not make a finding of guilt beyond a reasonable doubt on all elements will be "short-lived" given the Supreme Court's Sixth Amendment jurisprudence, starting with <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000), emphasizing the need for jury findings. <u>See</u> <u>Freeze</u> v. <u>State</u>, 827 N.E.2d 600, 605 (Ind. Ct. App. 2005) ("We believe the validity of <u>Neder</u> might be short-lived, in light of the seismic shift in the Supreme Court's Sixth Amendment jurisprudence since 1999.").

**B.  My View of "Uncontested"**

### 1.  The Unconstitutional Directed Guilty Verdict

The Supreme Court has long recognized that "trial by jury in criminal cases is fundamental to the American scheme of justice."  Duncan v. Louisiana, 391 U.S. 145, 149 (1968).  The "intended purpose" of a jury trial in a criminal case is to "mak[e] judicial or prosecutorial unfairness less likely":  "[p]roviding an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." Id. at 158, 156.  See also United States v. Martin Linen Supply Co., 430 U.S. 564, 572 (1977) ("[Jurors'] overriding responsibility is to stand between the accused and a potentially arbitrary or abusive Government that is in command of the criminal sanction."). It is a defendant's right to "prefer[] the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge."  Duncan, 391 U.S. at 156.  The jury system also serves as "a fundamental reservation of power in our constitutional structure" for the people to exercise "control in the judiciary." Blakely v. Washington, 542 U.S. 296, 306 (2004).  Hence, "a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction." Martin Linen Supply Co., 430 U.S. at 572-73 (citations omitted).

Against this background, the Supreme Court considered in Connecticut v. Johnson, 460 U.S. 73 (1983), whether harmless error review was appropriate for a jury instruction that unconstitutionally shifted the burden of proof on intent.[27] The Court divided equally on the question.[28] The plurality, consisting of four justices, asserted that the instruction on presumed intent was "the functional equivalent of a directed verdict" on intent and, therefore, could not be harmless unless the defendant had conceded intent. Id. at 84, 87 (plurality opinion).[29]

The Johnson dissent, also consisting of four justices, agreed with the plurality that an instruction that "permits a jury to convict a defendant without ever examining the evidence concerning an element of the crimes charged" would have "the effect

---

[27] In Sandstrom v. Montana, 442 U.S. 510 (1979), the Supreme Court had held that such an instruction violated due process. Id. at 524. Sandstrom, however, expressly left open the question of whether such an improper presumption instruction could ever be harmless. Id. at 526-27.

[28] Justice Stevens did not join the plurality's opinion but concurred in the judgment and thereby provided the fifth vote for a disposition. Justice Stevens did not confront whether harmless error review was appropriate for the presumption instruction because in his view "[n]o federal question arises when a state court has decided for itself that it will decline to apply the Chapman harmless error test at all." Johnson, 460 U.S. at 89 n.4 (Stevens, J., concurring).

[29] The plurality explained that "a defense such as alibi, insanity, or self-defense" could, depending on the case, amount to such a concession. Johnson, 460 U.S. at 87 (plurality opinion). However, the plurality also recognized that "a defendant in a criminal trial is justified, of course, in defending solely in reliance on the presumption of his innocence and the State's burden of proof." Id. at 87 n.16.

-50-

of a directed verdict." Id. at 96 (Powell, J., dissenting) (internal quotation marks omitted). The dissent likewise agreed that such an "instructional error[] that prevent[s] a jury from considering an issue," id. at 95 n.3, would preclude harmless error review. See id. at 97. Justice Powell's dissent disagreed only with the plurality's classification of the presumption instruction as the equivalent of a directed verdict. Id. at 95-97. The dissent viewed the presumption instruction as "distinguishable from other instructional errors that prevent a jury from considering an issue." Id. at 95 n.3. It therefore concluded that "[b]ecause the presumption does not remove the issue of intent from the jury's consideration, it does not preclude a reviewing court from determining whether the error was harmless beyond a reasonable doubt." Id. at 97 (internal quotation marks omitted).

In Rose v. Clark, 478 U.S. 570 (1986), the Supreme Court ultimately sided with the position of the Johnson dissent that harmless error review was appropriate for an improper presumption instruction on intent. The Court justified its conclusion by explaining that "[w]hen a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt." Rose, 478 U.S. at 580. Hence, the Court reasoned that "'[b]ecause a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury

from considering an issue,'" a situation that, according to the Court, would amount to "a directed verdict for the State." Id. at 580 & n.8 (quoting Johnson, 460 U.S. at 95 n.3 (Powell, J., dissenting)). Rose observed, consistent with both the Johnson plurality and dissent, that harmless error review "presumably would not apply" in such a case:

> [H]armless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury. We have stated that "a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction." This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty.

Id. at 578 (citations omitted) (quoting Martin Linen Supply Co., 430 U.S. at 572-73).[30]

---

[30] Having held that the presumption instruction did not direct a verdict, Rose disagreed with the position that such an improper presumption instruction "could never be harmless where a defendant contests intent." Rose, 478 U.S. at 583. The Court thereby rejected the Johnson plurality's view that a presumption instruction "'is the functional equivalent of a directed verdict' on intent, and is therefore harmless only when the defendant concedes intent." Rose, 478 U.S. at 572 n.1 (quoting Johnson, 460 U.S. at 84 (plurality opinion)). The Court instead adopted the Johnson dissent's view that "in cases of [an improper presumption instruction], 'the inquiry is whether the evidence was so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.'" Rose, 478 U.S. at 583 (quoting Johnson, 460 U.S. at 97 n.5 (Powell, J., dissenting)).

**2. The "Narrow Class of Cases" Where an Omitted Element is "Uncontested"**

Having decided <u>Rose</u> by distinguishing the improper presumption instruction in that case from an "instructional error[] that prevents a jury from considering an issue," i.e., one that directs a verdict, for which "harmless-error analysis presumably would not apply," the Court was presented in <u>Neder</u> with such a directed verdict. In <u>Neder</u>, the trial court had "explicitly directed the jury not to consider" the element of materiality. <u>Neder</u>, 527 U.S. at 16 n.1. Thus, unlike in <u>Rose</u>, it would be "incorrect to say that the jury made such a finding." <u>Id.</u>

For this reason, Justice Scalia's dissent in <u>Neder</u>, joined by Justices Souter and Ginsburg, asserted that holding the omission of the materiality element harmless was tantamount to allowing a directed verdict of guilty, which, under <u>Rose</u>, "would be <u>per se</u> reversible <u>no matter how overwhelming the unfavorable evidence</u>." <u>Neder</u>, 527 U.S. at 34 (Scalia, J., dissenting) (citing <u>Rose</u>, 478 U.S. at 578). The <u>Neder</u> majority responded by reaffirming the <u>Rose</u> rule against allowing directed verdicts of guilty "regardless of how overwhelmingly the evidence may point in that direction," <u>Rose</u>, 478 U.S. at 578 (internal quotation marks omitted). <u>See</u> <u>Neder</u>, 527 U.S. at 17 n.2. At the same time, <u>Neder</u> prescribed harmless-error review for "the <u>narrow</u> class of cases" where there was "a failure to charge on an <u>uncontested</u> element of the offense." <u>Neder</u>, 527 U.S. at 17 n.2 (emphases added).

-53-

Hence, the Court evidently used the requirement that the omitted element be "uncontested" to justify departing from its repeated statements that harmless error review would be unavailable where a court had directed a jury verdict of guilty in a criminal case. The Court emphasized that it was not taking an "'in for a penny, in for a pound' approach" -- i.e., by permitting harmless error review where the omitted element was <u>uncontested</u>, the Court was carving out an extremely limited exception to its bar against reviewing directed guilty verdicts for harmlessness. See <u>id.</u>

In addition, having justified harmless error review for the flawed presumption instruction in <u>Rose</u> by distinguishing that error from the omission of an element, the Court demonstrated its intention to treat the two types of error differently. In <u>Neder</u>, where the Court confronted the outright omission of an element, the majority adopted the "uncontested <u>and</u> . . . overwhelming evidence" formulation for analyzing whether "the jury verdict would have been the same absent the error," i.e., whether the error was harmless. <u>Neder</u>, 527 U.S. at 17 (emphasis added). Indeed, the rule against allowing directed verdicts, explicitly reaffirmed in <u>Neder</u>, 527 U.S. at 17 n.2, implicitly prohibits a reviewing court from finding harmlessness on the basis of overwhelming evidence alone.

In sum, given this precedential landscape, I am convinced that the Court deliberately chose to make the harmlessness inquiry more demanding where an element was omitted. Hence, I think the

Court in <u>Neder</u> intentionally prescribed the two-pronged inquiry requiring consideration of whether the omitted element was uncontested <u>and</u> whether the record contained overwhelming evidence of that element, and only when both prongs are met can a reviewing court conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error. Indeed, the Court emphasized the importance of "uncontested" to that inquiry: it listed "uncontested" as the first of the two necessary factors, <u>see</u> <u>id.</u> at 17, and it examined and re-examined whether Neder had contested the omitted element of materiality, <u>see</u> <u>id.</u> at 15, 16-17, 17 n.2, 19.

Thus, even where a reviewing court concludes beyond a reasonable doubt that an omitted element is supported by overwhelming evidence, I believe that the omission of that element is not harmless unless the court also concludes beyond a reasonable doubt that the element was "uncontested."

**3.  The Meaning of "Uncontested"**

In addressing the "uncontested" requirement in <u>Neder</u>, the Supreme Court noted that the defendant had made no attempt at trial or on appeal to argue the issue of materiality, <u>id.</u> at 19, and that he did "not suggest that he would introduce any evidence bearing upon the issue of materiality if so allowed," <u>id.</u> at 15. It further observed that Neder "apparently could not[] bring forth facts contesting the omitted element." <u>Id.</u> at 19.

The Court thus remarked on the defendant's failure to argue the materiality issue at any point in the proceedings. Given those circumstances, Neder did not explicitly elaborate on what would have been sufficient to "contest" the omitted element. Indeed, Neder did not definitively answer whether an element would be deemed "contested" if a defendant waited until appeal to argue for the first time that a contrary finding on the element was possible.

Moreover, as discussed above, the plurality in Johnson had taken the position that a directed verdict on an issue "may be harmless if the defendant conceded the issue." See Johnson, 460 U.S. at 87 (plurality opinion). On the one hand, the Court's articulation of Neder's trial strategy could possibly be construed as such a concession of the omitted element.[31] However, the Court used the word "uncontested," not "conceded," and the Court focused on the fact that Neder "did not argue to the jury -- and does not argue here -- that his false statements of income could be found immaterial." Neder, 527 U.S. at 16 (emphases added). Hence, in the opinion in this case, we have construed

---

[31] The Court represented that Neder "defended against the tax charges by arguing that the loan proceeds were not income because he intended to repay the loans, and that he reasonably believed, based on the advice of his accountant and lawyer, that he need not report the proceeds as income." Id. at 16-17. In other words, Neder's defense conceded that he received the considerable amount of funds charged, and "no jury could reasonably find that Neder's failure to report substantial amounts of income on his tax returns was not 'a material matter.'" Id. at 16.

"uncontested" to mean that the defendant did not argue that a contrary finding on the omitted element was possible. We thus found the omitted drug quantity elements "uncontested" due to Pizarro's lack of affirmative argument on the issue.

### 4. "Uncontested" in the Context of Instructional <u>Alleyne</u> Errors

Given Pizarro's lack of argument on appeal, we were able to resolve this case without considering whether an argument made for the first time on appeal "contests" an omitted element. However, I believe that an instructional <u>Alleyne</u> error that occurred before <u>Alleyne</u> was decided cannot be deemed "uncontested," and thus susceptible to a finding of harmless error, based solely on a defendant's failure to address the omitted element at trial.

Until the Supreme Court held in <u>Alleyne</u> that facts triggering a mandatory minimum sentence must be found by a jury beyond a reasonable doubt, Pizarro had no obligation or incentive to discuss evidence of drug quantity.[32] Therefore, if Pizarro had contested the drug quantity elements on appeal, I would have found no need to examine whether he had also challenged the elements at trial. In my view, he could not have been faulted for failing to contest an issue at trial that was not, in fact, in play at that time. <u>Cf.</u> <u>Descamps</u> v. <u>United States</u>, 133 S. Ct. 2276, 2289 (2013)

---

[32] Indeed, because the trial in this case pre-dated <u>Apprendi</u>, drug quantity was not an issue for the jury at all.

("A defendant, after all, often has little incentive to contest facts that are not elements of the charged offense -- and may have good reason not to.  At trial, extraneous facts may confuse the jury.  (Indeed, the court may prohibit them for that reason.)").  At least where, as here, the defendant had no reason to think that drug quantity mattered with respect to conviction, I conclude that he could not be faulted for failing to contest the issue at trial.  Where a defendant's trial occurred pre-<u>Alleyne</u>, his obligation to contest the element of drug quantity can only arise when he first confronts the government's assertion of harmless error.

I recognize that this conclusion means that, in cases involving pre-<u>Alleyne</u> trials on direct appeal, a defendant would almost always be able to contest drug quantity and avoid a finding of harmless error.  On appeal, or in resentencing proceedings before the district court -- if that is where the government first asserts harmless error -- the defendant would only have to make an argument that could, as a theoretical matter under the law, negate the omitted element.  A challenge to the credibility of witnesses might suffice.

Yet I do not find problematic the ease of such a showing.  First, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  <u>In re Winship</u>, 397 U.S. 358, 364 (1970).  The burden is on the

government to show that the constitutional error was harmless beyond a reasonable doubt.  See Premo v. Moore, 131 S. Ct. 733, 744 (2011) (citing Neder, 527 U.S. at 18).  This is a significant burden:  "It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned."  In re Winship, 397 U.S. at 364; see id. ("It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.").

Second, in Neder, the Supreme Court remarked that upholding verdicts flawed solely by the absence of a jury finding on an uncontested element that is supported by overwhelming evidence "'serve[s] a very useful purpose insofar as [it] block[s] setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.'"  Neder, 527 U.S. at 19 (quoting Chapman, 386 U.S. at 22 (alterations in original)).  That concern, to the extent it influenced the majority's decision in Neder, is not present in the Alleyne instructional error context because the non-harmless omission of a jury finding on the drug quantity elements for the conspiracy and possession counts would not negate a finding of

guilt.[33]  In cases such as Pizarro's, it would merely change the defendant's sentencing exposure, reducing the maximum sentence to a still substantial twenty years of imprisonment for conviction on a lesser-included offense.[34]

## II.

Despite the compelling reasons for concluding that an omitted element cannot be harmless under Neder unless the reviewing court concludes beyond a reasonable doubt that the element was both uncontested and supported by overwhelming evidence, there is troubling inconsistency in the courts.  The importance of the issue is self-evident.  At stake is a criminal defendant's constitutional right to trial by jury.  I therefore urge the Supreme Court (1) to clarify that Neder requires a reviewing court to conclude beyond a reasonable doubt that an omitted element is uncontested before the

---

[33] I make no judgment here, either explicitly or implicitly, on whether a concern for judicial efficiency related to avoiding a retrial could justify a different standard for contesting an omitted element where a finding of non-harmlessness would necessarily result in a retrial.

[34] Under 28 U.S.C. § 2106, in the case of a non-harmless instructional Alleyne or Apprendi error, a circuit generally may direct the entry of conviction on the lesser-included offense that does not require the omitted element, so long as no "injustice or unfair prejudice will inure to the defendant."  See United States v. Sepúlveda-Hernández, 752 F.3d 22, 28-29 (1st Cir. 2014) (providing multi-step test for determining whether it would be permissible to direct entry of conviction on lesser-included offense).  Cocaine conspiracy and possession offenses under 21 U.S.C. § 841(b)(1)(C), without specified drug quantities or mandatory minima, are lesser-included offenses of the aggravated crimes under § 841(b)(1)(A).  See Burrage v. United States, 134 S. Ct. 881, 887 n.3 (2014).

omission can be found harmless and (2) to explain what a defendant must do and when he or she must do it in order to contest the omitted element to preclude a finding of harmlessness.

**TORRUELLA, Circuit Judge (Concurring).** I write separately in response to the preceding concurrence and its inventive gloss on <u>Neder</u> v. <u>United States</u>, 527 U.S. 1 (1999), and its progeny. <u>Neder</u> simply applied the standard constitutional harmless-error rule articulated nearly fifty years ago in <u>Chapman</u> v. <u>California</u>, 386 U.S. 18 (1967), to a jury instruction that omitted an element of an offense. <u>See</u> <u>Neder</u>, 527 U.S. at 4 (holding that "the harmless-error rule of <u>Chapman</u> v. <u>California</u>" applies to the failure of a trial judge to submit an element of the offense to the jury). Contrary to the position taken by Judge Lipez, <u>Neder</u> did not supplant the <u>Chapman</u> rule by creating a novel, two-pronged test for such errors. I write separately lest the other concurrence add to the confusion of which it complains.

The other concurrence posits that there is a "troubling inconsistency" in the application of the constitutional harmless-error test in the wake of <u>Neder</u>. <u>Ante</u>, at 60 (Lipez, J., concurring). It argues that there are two possible interpretations of <u>Neder</u>. The first interpretation -- with which I agree, and which is overwhelmingly supported by Supreme Court and First Circuit precedent -- is that <u>Neder</u> simply applied the standard <u>Chapman</u> harmless-error test: "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" <u>Neder</u>, 527 U.S. at 15 (quoting <u>Chapman</u>, 386 U.S. at 24). The second potential interpretation is that the

Neder Court created a new, two-pronged harmless-error test for a subset of instructional constitutional errors: "an omitted element cannot be harmless under Neder unless the reviewing court concludes beyond a reasonable doubt that the element was both uncontested and supported by overwhelming evidence." Ante, at 60. Judge Lipez advocates for the latter reading, and he urges the Supreme Court to clarify whether his interpretation is correct.

In my view, no such clarification is needed, as the governing precedent is abundantly clear that Neder simply applied the standard Chapman harmless-error test. Neder, according to its plain text -- and as reinforced by subsequent Supreme Court and First Circuit decisions -- neither added additional elements (i.e., "uncontested" and "overwhelming evidence") to the standard Chapman test nor supplanted it with a new harmless-error test for some subset of cases.

While Judge Lipez's view of Neder is not strictly impossible, such an interpretation is exceedingly strained and finds scant support in Neder itself, not to mention the numerous cases citing Neder over the past fifteen years. To the extent that there is inconsistency in the wake of Neder, his concurrence adds to the confusion by presenting the issue as a much closer question than it is. Under a more straightforward, faithful, and commonsense reading of Neder and our subsequent cases, there is

very little -- if any -- inconsistency in our prior application of the constitutional harmless-error test for instructional errors.

I express no view here on whether Neder was rightly decided, or whether, as Judge Lipez suggests, the Supreme Court should reconsider its decision. Rather, I write only to attempt to accurately reflect the current state of the constitutional harmless-error test in the First Circuit, following the relevant Supreme Court precedent. For constitutional errors like those in Neder and the instant case ("the failure to instruct on an element in violation of the right to a jury trial"), "the harmless-error inquiry [remains] essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" Neder, 527 U.S. at 18; see also id. at 19 ("A reviewing court making this harmless-error inquiry . . . asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.").

## I.  The Supreme Court's Constitutional Harmless-Error Test

According to the harmless-error rule under the Federal Rules of Criminal Procedure, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a).  In Chapman v. California, the Supreme Court articulated the standard harmless-error test for constitutional errors.  Chapman, 386 U.S. at 24.  To determine

whether a constitutional error is harmless, a reviewing court asks whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  Id.

Nearly two decades later, in Delaware v. Van Arsdall, 475 U.S. 673 (1986), the Supreme Court reaffirmed the Chapman harmless-error rule.  Id. at 681 ("Since Chapman, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.").  The Court explained that "[t]he harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error."  Id. (internal citation omitted).  "As we have stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one."  Id.

Shortly after Van Arsdall was decided, in Rose v. Clark, 478 U.S. 570 (1986), the Supreme Court cautioned that a "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury," reasoning that "'a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with

such a verdict . . . regardless of how overwhelmingly the evidence may point in that direction.'"  Id. at 578 (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 572-573 (1977)).  The Court explained that when the Sixth Amendment right to a jury trial in serious criminal cases "is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty."  Id.

The Rose Court further "emphasized, however, that while there are some errors to which Chapman does not apply, they are the exception and not the rule."  Id.  Therefore, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."  Id. at 579.  The Court explained that the "thrust" of constitutional rules for criminal trials "is to ensure that those trials lead to fair and correct judgments."  Id.  "Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed."  Id.  The Court reiterated that it has "repeatedly stated" that a criminal defendant is entitled "'to a fair trial, not a perfect one.'"  Id. (quoting Van Arsdall, 475 U.S. at 681).

To date, the Supreme Court has not overruled Chapman or changed the harmless-error test for constitutional errors.  Rather,

the Supreme Court has repeatedly reaffirmed the standard constitutional harmless-error test as articulated in Chapman. See, e.g., Premo v. Moore, 131 S. Ct. 733, 744 (2011); Rivera v. Illinois, 556 U.S. 148, 155-56 (2009) (affirming a finding of harmless error when "it was clear beyond a reasonable doubt that a rational jury would have found [the defendant] guilty absent the error") (internal quotation marks and citations omitted)); Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003).

## II. The Supreme Court's Opinion in Neder

Ignoring the more recent Supreme Court cases cited above, and the plethora of First Circuit cases holding otherwise, the other concurrence relies almost entirely on a single quote from Neder to justify its position that Neder created a new test to supplant the Chapman harmless-error test in certain circumstances. See Neder, 527 U.S. at 17 (stating that a "jury verdict would have been the same absent" a failure to instruct on an element, "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence"). Viewed out of context, it is possible that this quote could support Judge Lipez's preferred interpretation. In its proper context, however, as further explained below, it is perfectly clear that this quote "was merely descriptive of the circumstances in Neder itself" and was not "prescriptive for any finding of harmlessness where an element was omitted." See ante,

-67-

at 40.  Nothing in Neder (or any subsequent Supreme Court case) suggests that this two-pronged test is necessary for a finding of harmlessness rather than merely sufficient for such a finding. Similarly, nowhere does Neder purport to establish a new constitutional harmless-error test to displace the standard Chapman test in certain circumstances.

The defendant in Neder had been tried for several violations of federal criminal fraud statutes.  Neder, 527 U.S. at 4.  It was established that the district court erred in refusing to submit the materiality element of the tax fraud charges to the jury.  See id.  The Supreme Court granted certiorari to answer two questions: (1) whether materiality was an element of the relevant fraud statutes, and (2) "whether, and under what circumstances, the omission of an element from the judge's charge to the jury can be harmless error."  Id. at 7.  The Court answered the first question in the affirmative, holding that materiality was an element of the relevant charges.  Id. at 4.

With respect to the second question, the Court held "that the harmless-error rule of Chapman v. California" indeed applied to the district court's error in omitting an element of the offense from the jury charges.  Id. at 4.  The Court proceeded to examine in detail this type of constitutional instructional error, where the trial court itself makes a finding on an element of the offense rather than submitting that element for a jury determination.  In

so doing, the Neder court explicitly considered the argument that such an error is "'structural,' and thus subject to automatic reversal." Id. at 8 (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)); see also id. at 7 (stating that structural errors "defy analysis by 'harmless error' standards" (quoting Arizona v. Fulminante, 499 U.S. 279, 309, (1991)); id. (observing that structural errors "are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome" (quoting Fed. R. Crim. P. 52(a))).

However, the Court rejected this structural-error argument, observing that structural errors constitute only "a limited class of fundamental constitutional errors." Id. The Court had previously "found an error to be 'structural' . . . only in a 'very limited class of cases," including: the complete denial of counsel, a biased trial judge, racial discrimination in the selection of the grand jury, the denial of self-representation at trial, the denial of a public trial, and a defective reasonable-doubt instruction. Id. at 8 (quoting Johnson, 520 U.S. at 468). It explained that those structural-error cases contain defects that "affect[] the framework within which the trial proceeds, rather than simply an error in the trial process itself." Id. (quoting Fulminante, 499 U.S. at 310). To be deemed structural errors, such defects must "infect the entire trial process, and necessarily

-69-

render a trial fundamentally unfair." Id. (internal quotation marks and citations omitted).

"The error at issue [in Neder] -- a jury instruction that omits an element of the offense -- differs markedly from the [structural] constitutional violations . . . found to defy harmless-error review." Id. The Court clarified that "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Id. at 9. Similarly, the Neder Court reasoned that omitting an element of the offense from the jury instructions will not "always render a trial unfair." Id. To the contrary, despite the Neder trial judge's failure to charge the jury on the materiality element, Neder's trial was not "fundamentally unfair" because he "was tried before an impartial judge, under the correct standard of proof and with the assistance of counsel; [and] a fairly selected, impartial jury was instructed to consider all of the evidence and argument in respect to Neder's defense against the tax charges." Id.

For those reasons, the Neder Court "concluded that the omission of an element is an error that is subject to harmless-error analysis." Id. at 15. Conducting this analysis, in order to answer whether the omission of the materiality element in Neder was in fact harmless, the Court explicitly turned to Chapman,

in which it had previously "set forth the test for determining whether a constitutional error is harmless." Id. (citing Chapman, 386 U.S. at 18). "That test . . . is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. (quoting Chapman, 386 U.S. at 24). Comparing the failure to instruct on an element of the offense with other constitutional errors, the Neder Court concluded "that the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" Id. at 18.

Applying this test, after reviewing the record, the Court found that "[t]he evidence supporting materiality was so overwhelming, in fact, that Neder did not argue to the jury -- and does not argue here -- that his false statements of income could be found immaterial." Id. at 16. "In this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." Id. at 17. Therefore, the Neder Court concluded that they "think it beyond cavil here that the error 'did not contribute to the verdict obtained.'" Id. (quoting Chapman, 386 U.S. at 24).

The Neder Court further instructed that if, after conducting "a thorough examination of the record," a reviewing

"court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error -- for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding -- it should not find the error harmless."  Id. at 19.  The Court explained that such a reviewing court, "in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element."  Id.

## III.  Nothing in Neder Itself Mandates the Other Concurrence's Approach

As is evident from the discussion above and a careful reading of Neder itself, the Neder Court did not replace the standard Chapman harmless-error test with a new, two-pronged test -- that the omitted element must be both (1) "uncontested" and (2) supported by "overwhelming evidence" in order for an appellate court to find the instructional error to be harmless.  Instead, the Neder Court explicitly and repeatedly referenced and applied the standard Chapman harmless-error test (whether it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty if it had been properly instructed on the omitted element), finding that test to be satisfied under the particular circumstances of the case.

No language in Neder suggests that the Supreme Court intended to create a new harmless-error test.  Instead, Neder merely indicates that, in a particular factual situation where an

-72-

omitted element was both uncontested and supported by overwhelming evidence, it was <u>overdetermined</u> that the error was harmless. Indeed, in context, the very language relied upon by the other concurrence supports this view:

> <u>In this situation</u>, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. <u>We think it beyond cavil here</u> that the error "did not contribute to the verdict obtained."

<u>Neder</u>, 527 U.S. at 17 (quoting <u>Chapman</u>, 386 U.S. at 24) (emphases added). This quoted language strongly suggests that <u>Neder</u>'s discussion of "uncontested" was, in fact, merely descriptive of what happened in that case and was not a prescriptive mandate for every subsequent case involving the omission of an element. <u>See</u> <u>Neder</u>, 527 U.S. at 19 ("In a case such as this one . . . ."). The second sentence in the block quote above demonstrates that the <u>Neder</u> Court continued to refer back to the standard <u>Chapman</u> test, finding that test to be overwhelmingly satisfied in the particular factual circumstances (i.e., "uncontested and supported by overwhelming evidence") involved in <u>Neder</u>.

In fact, <u>Neder</u>'s own language makes clear that it did <u>not</u> intend to establish a new harmless-error test for the omission of an element from the jury instructions. <u>Neder</u> states that for various constitutional errors -- including "the failure to instruct

-73-

on an element in violation of the right to a jury trial" -- "the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?"  Neder, 527 U.S. at 18. Finally, the Neder Court concluded its harmless-error discussion by referring once more to the Chapman test: "A reviewing court making this harmless-error inquiry . . . asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." Id. at 19.  Therefore, nothing in Neder supports, much less compels, a conclusion that the Supreme Court intended to supplant the standard Chapman harmless-error test with a new, mandatory, exclusive, two-pronged test (in which an omitted element must be both "uncontested" and "supported by overwhelming evidence") for cases in which the jury instructions erroneously omitted an element of the offense.

**IV.  The Importance of the Word "and": Language in Neder Contradicts the Other Concurrence's Interpretation**

The other concurrence relies heavily on one small word in Neder:  the conjunction "and" that joins "uncontested" and "supported by overwhelming evidence."  See ante, at 39-40 ("Neder expressly states that a 'jury verdict would have been the same absent' a failure to instruct on an element, 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.'" (quoting Neder, 527 U.S. at 17) (emphasis supplied in Judge Lipez's

-74-

concurrence)); id. at 54 (arguing that the Neder "majority adopted the 'uncontested and . . . overwhelming evidence' formulation for analyzing whether . . . the error was harmless" (quoting Neder, 527 U.S. at 17) (emphasis supplied in Judge Lipez's concurrence)). Relying on this quoted language from Neder, and emphasizing the word "and" that joins the two factors, Judge Lipez concludes that "the Court in Neder intentionally prescribed the two-pronged inquiry requiring consideration of whether the omitted element was uncontested and whether the record contained overwhelming evidence of that element, and only when both prongs are met can a reviewing court" find harmless error. Id. at 55 (emphasis in original). Judge Lipez thus urges that, in this context, we must assign significant weight to the word "and." Consistent with this view, the Neder Court's choice of the conjunctive "and" -- as opposed to the disjunctive "or" -- means that both conditions must be satisfied in order to draw the resulting conclusion.

Assigning this same weight to a parallel construction elsewhere in Neder, however, directly contradicts Judge Lipez's interpretation. In addition to describing a circumstance when an omitted-element error is harmless, Neder also specified when such an error is not harmless:

> Of course, safeguarding the jury guarantee
> will often require that a reviewing court
> conduct a thorough examination of the record.
> If, at the end of that examination, the court
> cannot conclude beyond a reasonable doubt that
> the jury verdict would have been the same

> absent the error -- for example, where the
> defendant contested the omitted element <u>and</u>
> raised evidence sufficient to support a
> contrary finding -- it should not find the
> error harmless.

<u>Neder</u>, 527 U.S. at 19 (emphasis added).  Applying the other

concurrence's logic to this quote yields the following conclusion:

in order for a reviewing court to determine that the error was <u>not</u>

harmless, the omitted element must be <u>both</u> contested <u>and</u> not

supported by overwhelming evidence.

If both <u>Neder</u> "prongs" (uncontested and overwhelming

evidence) were necessary for a finding of harmless error -- as

argued by the other concurrence -- then a failure of either prong

would be sufficient to find the error not harmless.  If the Supreme

Court intended such a result, we might expect it to have used the

disjunctive "or" instead of the conjunctive "and" emphasized in the

block quote above.  However, the <u>Neder</u> Court only specified that

reviewing courts should not find errors harmless when the defendant

(1) contested the omitted element <u>and</u> (2) raised evidence to

support a contrary finding.  <u>Id.</u>  Therefore, the principal textual

support for the other concurrence's reading of <u>Neder</u> is at the very

least undermined, and perhaps negated, by closely related, parallel

language elsewhere in <u>Neder</u> itself.

**V.   Whether the Two-Pronged <u>Neder</u> Inquiry Is Necessary, or Merely Sufficient, for a Finding of Harmlessness**

I read <u>Neder</u> as simply describing a particular

circumstance (when an omitted element is both "uncontested" and

supported by "overwhelming evidence") that happens to be sufficient to meet the well-established Chapman harmless-error test -- whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]" Neder, 527 U.S. at 18. In my view, Neder-type errors -- where an omitted element is both uncontested and supported by overwhelming evidence -- are merely a subset of the universe of harmless errors. In other words, all Neder-type errors may be harmless errors, but not all harmless instructional errors must be Neder-type errors.

In contrast, the other concurrence erroneously takes one example of a certain circumstance qualifying as a harmless error -- when the omitted element was both uncontested and supported by overwhelming evidence -- and attempts to substitute that specific circumstance for the general test itself. Under this view, the new test supplants the old. In support of this position, the other concurrence references only one formulation of the harmless-error test, and posits that this particular formulation is both mandatory and exclusive. Compare ante, at 54 ("In Neder, where the Court confronted the outright omission of an element, the majority adopted the 'uncontested and . . . overwhelming evidence' formulation for analyzing whether . . . the error was harmless." (quoting Neder, 527 U.S. at 17) (emphasis supplied in Judge Lipez's concurrence)), with Neder, 527 U.S. at 17 ("[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element

was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."). Yet this is not even the sole formulation of the harmless-error test in Neder itself. See Neder, 527 U.S. at 18 (stating that for various constitutional errors -- including "the failure to instruct on an element in violation of the right to a jury trial" -- "the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?"); see also id. at 19 ("A reviewing court making this harmless-error inquiry . . . . asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.").

Moreover, the other concurrence's transformation of the quoted language from Neder into a two-pronged test, in which both prongs must be satisfied, also commits an error of logic even if based solely upon the Neder quote itself. The conditional statement from Neder can be summarized: "If A [uncontested] and B [overwhelming evidence], then C [harmless error]." I agree that in Neder, both conditions (A and B) were sufficient to establish harmless error. However, nothing in Neder mandates that both conditions are necessary to establish harmless error.

The other concurrence, however, misreads this statement from Neder as "if -- and only if -- both A [uncontested] and B

-78-

[overwhelming evidence], then C [harmless error]." Such an interpretation is contrary both to the other articulations of the test in Neder itself and to the presentation of the test in subsequent cases. Reading Neder in context, I am convinced that the Court did not create a new harmless-error test, but instead simply applied the traditional test, reasoning that in the particular circumstances presented in that case, both A and B happened to be satisfied. The other concurrence recognizes this very possibility. See ante, at 40 ("Neder, however, did not unequivocally answer whether its two-part formulation for finding an omitted element harmless in Neder's case . . . was merely descriptive of the circumstances in Neder itself or also prescriptive for any finding of harmlessness where an element was omitted."). As indicated herein and in the appendix, the overwhelming weight of authorities support the view that Neder's discussion of "uncontested" was, in fact, "merely descriptive" of what happened in that case and was not a "prescriptive" mandate of a new test for every subsequent case.

## VI. Alleyne Errors Are Not Structural Errors

The other concurrence's approach in effect subjects a subset of instructional-error cases to structural error, in contravention of the Supreme Court's mandate that harmless-error review -- and not structural error -- applies to such cases. The Supreme Court has stated that most constitutional errors are

subject to harmless-error review, and that only in rare cases will they be deemed structural errors requiring automatic reversal. See, e.g., Washington v. Recuenco, 548 U.S. 212, 222 (2006) (holding that preserved Apprendi/Blakely error -- like the failure to submit an element to the jury in Neder -- is not structural error and is instead subject to harmless-error review); United States v. Cotton, 535 U.S. 625, 631-32 (2002) (applying plain-error review to an unpreserved Apprendi error, and refusing to accept the defendants' invitation to treat the error as structural).  We have previously held that "there would appear to be no basis for finding Alleyne error to be one of those rare cases to which harmless-error review does not apply."  United States v. Harakaly, 734 F.3d 88, 95 (1st Cir. 2013).

The other concurrence erroneously suggests that if a defendant "contests" the omitted element in any way, then such an error cannot be harmless.  Indeed, the other concurrence "recognize[s] that this conclusion means that, in cases involving pre-Alleyne trials on direct appeal, a defendant would almost always be able to contest drug quantity and avoid a finding of harmless error."  See ante, at 58.  It argues that "[o]n appeal, or in resentencing proceedings before the district court -- if that is where the government first asserts harmless error -- the defendant would only have to make an argument that could, as a theoretical matter under the law, negate the omitted element."  Id.

Such a conclusion would declaw the harmless-error doctrine in this context and transform an <u>Alleyne</u> error into de facto structural error, despite the Supreme Court and First Circuit cases requiring the application of a harmless-error standard to <u>Apprendi</u>/<u>Alleyne</u> errors. See, e.g., <u>Recuenco</u>, 548 U.S. at 222; <u>Cotton</u>, 535 U.S. at 631-32; <u>Harakaly</u>, 734 F.3d at 95-97; <u>Pérez-Ruiz</u>, 353 F.3d at 17-20. Nor is this concern obviated by the fact that <u>some</u> conviction remains intact (on the lesser-included offense). In such cases, a conviction is nonetheless vacated on the greater offense, which would be otherwise valid but for "'small errors or defects that have little, if any, likelihood of having changed the result of the trial.'" See <u>Neder</u>, 527 U.S. at 19 (quoting <u>Chapman</u>, 386 U.S. at 22). The other concurrence does not establish that preserving merely a lesser-included offense conviction completely satisfies this concern.

Let us consider a hypothetical case in which (a) the reviewing court concludes beyond a reasonable doubt that the jury verdict would have been the same absent the error (had the jury been instructed on the omitted element), but (b) the defendant nonetheless had contested the omitted element in some way. Under my view of <u>Neder</u> and subsequent Supreme Court and First Circuit precedent, the resolution of (a) ends the inquiry: if the reviewing court is convinced beyond a reasonable doubt that the jury verdict would have been the same absent the error, then there is no need to

consider question (b).  In contrast, Judge Lipez's suggested approach would reverse the defendant's conviction in such a case, reasoning that there is no need to consider question (a).  In my view, such an approach is akin, if not functionally equivalent, to structural error: the reviewing court would reverse the conviction even if the error had no effect on the jury's verdict.  Controlling precedent does not permit such a result, as the Supreme Court has explicitly instructed that <u>Alleyne</u> errors are not structural.  <u>See</u>, <u>e.g.</u>, <u>Recuenco</u>, 548 U.S. at 222; <u>Cotton</u>, 535 U.S. at 631-32.  Therefore, the Supreme Court's instruction that harmless error -- and not structural error -- applies to the type of instructional error at issue here and in <u>Neder</u> also counsels against the other concurrence's interpretation.

## VII.  The Eleventh Circuit's Ultimate Resolution of <u>Neder</u> on Remand

Additionally, the decision of the Eleventh Circuit on remand in <u>Neder</u> provides further support for my view, and it explicitly rejects the new two-pronged test proposed by Judge Lipez.  After the Supreme Court remanded Neder's case to the Eleventh Circuit for reconsideration, the Eleventh Circuit affirmed Neder's convictions, concluding that the district court's failure to instruct on the materiality element was harmless error.  <u>United States</u> v. <u>Neder</u>, 197 F.3d 1122, 1124 (11th Cir. 1999).  On remand, Neder -- similarly to Judge Lipez's approach here -- argued that "the Supreme Court held that the failure to instruct on materiality

can never be harmless error unless the Government shows <u>both</u> that Neder <u>never contested</u> materiality <u>and</u> that the evidence <u>overwhelmingly</u> supports the materiality of every charged falsehood." <u>Id.</u> at 1129 (emphases added). The Eleventh Circuit resoundingly rejected that argument:

> However, <u>the Supreme Court did not hold that omission of an element can never be harmless error unless uncontested</u>. Indeed, the Supreme Court emphasized that the correct focus of harmless-error analysis is: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" Stated another way, the focus is whether "the jury verdict would have been the same absent the error" or "whether the record contains evidence that could rationally lead to a contrary finding with respect to [materiality]." Thus, <u>whether Neder contested materiality may be considered but is not the pivotal concern</u>. Instead, what the evidence showed regarding materiality is the touchstone. Indeed, as outlined in the following, more specific discussion relating to the counts at issue, the Government's evidence of materiality for each of these bank, mail, and wire fraud counts is overwhelming.

<u>Id.</u> (emphases added) (footnote and internal citations omitted). The Eleventh Circuit further explained that "[u]nder harmless-error analysis, . . . . the Government must show that the evidence of materiality is so overwhelming . . . that no rational jury, properly instructed on the element of materiality, could have acquitted Neder on that count." <u>Id.</u>

In a footnote, the Eleventh Circuit further considered Neder's argument -- predicated upon the same <u>Neder</u> language relied

upon by Judge Lipez here -- that the omitted element <u>must</u> be uncontested for a finding of harmlessness. <u>Id.</u> at 1129 n.6. The court reasoned that "[t]he language from the Supreme Court's opinion that Neder cites to support his argument on this point is taken out of context." <u>Id.</u>

"Considered in context, the Supreme Court's statement clearly does not mean that omission of an element of an offense can never be harmless error unless uncontested." <u>Id.</u> "The statement" -- that the error is harmless because "'the omitted element was uncontested and supported by overwhelming evidence'" -- "means only that the fact materiality was not contested supports the conclusion that the jury's verdict would have been the same absent the error." <u>Id.</u> (quoting <u>Neder</u>, 527 U.S. at 17). Therefore, the Eleventh Circuit's resolution of the <u>Neder</u> case on remand strongly militates against the other concurrence's reading of the Supreme Court's opinion in <u>Neder</u>.

## VIII. Post-<u>Neder</u> Application of the Harmless-Error Test

### A. Supreme Court

No post-<u>Neder</u> Supreme Court case supports the other concurrence's gloss on <u>Neder</u>. Rather, every subsequent Supreme Court case citing <u>Neder</u> reinforces the primacy of the standard <u>Chapman</u> harmless-error test. <u>See</u>, <u>e.g.</u>, <u>Premo</u>, 131 S. Ct. at 744 ("[O]n direct review following an acknowledged constitutional error at trial," the government has "the burden of showing that it was

'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoting <u>Neder</u>, 527 U.S. at 18)); <u>Mitchell</u>, 540 U.S. at 17-18 ("A constitutional error is harmless when 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting <u>Neder</u>, 527 U.S. at 15)).

### B.  First Circuit

Judge Lipez's preferred interpretation of <u>Neder</u> is not faithful to a fair reading of the overwhelming weight of our precedent.  Indeed, he fails to identify a single First Circuit case that explicitly endorses his understanding of <u>Neder</u>.  By contrast, the post-<u>Neder</u> First Circuit cases reaffirming the standard <u>Chapman</u> harmless-error test are overwhelming in number.  Indeed, they are so numerous that cataloguing them proved prohibitively time-consuming.  In the appendix to this concurrence, I have provided eighteen examples of such First Circuit cases, including six cases from 2014 alone.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Ramírez-Negrón</u>, 751 F.3d 42, 51 n.8 (1st Cir. 2014) (stating than an <u>Alleyne</u> error would be harmless beyond a reasonable doubt if "no reasonable jury could have found that the defendants were responsible for drug quantities below the respective thresholds triggering the mandatory minimum sentences").

"A panel of this court is normally bound to follow an earlier panel decision that is closely on point, unless an

exception exists to the principles of stare decisis." United States v. Rodríguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007). Judge Lipez's view -- that Neder replaced the Chapman harmless-error test with a two-pronged test for harmlessness where the jury was not instructed on an element of the crime -- is not consistent with binding First Circuit precedent, including cases authored or joined by all three judges on the instant panel. Some of these cases are included in the appendix at the end of this concurrence.

This past June, for example, we held that "instructional error, including omission of an element, is harmless if it is clear beyond a reasonable doubt that a rational jury would have found guilt absent the error." United States v. Marshall, 753 F.3d 341, 346 (1st Cir. 2014) (emphasis added). Although the defendant in Marshall technically contested proof of an element of the offense, we nonetheless concluded that the error was harmless because "[t]here is no reasonable doubt that a rational fact-finder would have found Marshall guilty of" the disputed element. Id.

We applied the same test in United States v. Newell, 658 F.3d 1 (1st Cir. 2011), a unanimous opinion joined by Judge Lipez. In Newell, we stated that "the failure to instruct the jury on [an omitted element] is subject to harmless error review," which "requires ascertaining 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Id. at 17 n.19 (quoting Neder, 527 U.S. at

15)).  Applying that test, we held that "even if the district court erred in not giving the requested materiality instruction . . . that error was harmless as the evidence of materiality was more than sufficient to support the convictions under this standard."  Id.

Citing Newell and Neder, we applied like reasoning to arrive at a similar holding in United States v. McDonough, 727 F.3d 143, 161-62 (1st Cir. 2013).  The unanimous McDonough panel, including Judge Lipez, concluded that -- assuming that the district court refused to instruct the jury on a required element -- "the evidence was [nonetheless] 'more than sufficient to support the convictions.'"  Id. at 162 (quoting Newell, 658 F.3d at 17 n.19).  On that basis, the panel was "confident that the same result would have obtained" if the jury had been properly instructed as to the allegedly omitted element.  Id.  Therefore, the panel held that any error was ultimately harmless.  Id. at 161.

Other First Circuit cases further solidify the conclusion that Judge Lipez's gloss on Neder is inconsistent with our precedent.  See, e.g., United States v. Melvin, 730 F.3d 29, 39 (1st Cir. 2013) (constitutional error "requires reversal unless the government proves 'beyond a reasonable doubt that the error did not influence the verdict'"); United States v. Godin, 534 F.3d 51, 61 (1st Cir. 2008) ("When examining whether the omission of an element in a jury instruction is harmless error, we ask whether the record

-87-

contains evidence that could rationally lead to a contrary finding with respect to the omitted element." (internal quotation marks and citation omitted)); United States v. Morgan, 384 F.3d 1, 8 (1st Cir. 2004) (Apprendi errors "should be held harmless so long as the evidence for the trial judge's factual findings is overwhelming and no reasonable jury could have disagreed with them"); United States v. Soto-Beníquez, 356 F.3d 1, 46 (1st Cir. 2003) ("An Apprendi error is harmless where the evidence overwhelmingly establishes the minimum drug quantity needed to justify the statutory maximum under which the defendants were sentenced."). None of the preceding cases -- nor any other First Circuit cases I have found -- state that a reviewing court can never find the omission of an element to be harmless error simply because the defendant contested the omitted element in some way. Therefore, the other concurrence's interpretation of Neder's two-pronged inquiry finds little support in the existing precedent by which we are bound.

### C. Lack of Support for the Other Concurrence's Position

Neder was decided in June 1999. In the intervening fifteen years, Neder has been cited in over 3,600 cases. It is telling that the other concurrence fails to identify a single case that explicitly holds that its reading of Neder is correct. Judge Lipez has pointed to cases with language that might, at best, be consistent with his suggested approach. None of those cases are compelling, however, particularly in light of Supreme Court and

First Circuit precedent and the examples listed in the appendix. Below, I review the cases relied upon by the other concurrence to support its view of <u>Neder</u>, concluding that these cases do little to demonstrate that Judge Lipez's interpretation is correct.

### 1. First Circuit

The First Circuit cases cited by Judge Lipez as "inconsistent" in their application of <u>Neder</u> are easily reconciled with my view. <u>Neder</u>'s two factors ("uncontested" and "supported by overwhelming evidence") are best understood as merely two <u>reasons</u> why the <u>Neder</u> Court concluded that the jury verdict was unaffected by the omission of the materiality element. It thus makes perfect sense that we sometimes emphasize whether a particular omitted element was contested (and to what degree), sometimes emphasize the strength of the evidence regarding the omitted element, sometimes discuss both, and sometimes examine other factors and reasons. In other words, the contested-or-uncontested nature of the element, and the strength of the evidence supporting that element, both can serve evidentiary functions: they both can affect the ultimate determination whether it was "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." <u>Neder</u>, 527 U.S. at 18. Applying this view to the First Circuit cases cited by the other concurrence, any apparent inconsistency melts away. In any event, as indicated by the non-exhaustive selection of cases in the appendix, the overwhelming

weight of First Circuit cases support the conclusion that the standard <u>Chapman</u> harmless-error test applies to the omission of an element from jury instructions.

## 2. Other Circuit Courts of Appeals

The other concurrence cites cases from four circuit courts of appeals -- the Second, Fourth, Ninth, and Eleventh Circuits -- as examples of an inter-circuit conflict. <u>See</u> <u>ante</u>, at 45-48. Of those cases, however, only the Ninth Circuit case might provide any sort of support for the other concurrence's approach. Even that case, however, applied the standard <u>Chapman</u> test, reasoning that "[the <u>Apprendi</u> error was, of course, a constitutional one," and that the court "must therefore reverse unless we find beyond a reasonable doubt that the result would have been the same absent the error." <u>United States</u> v. <u>Guerrero-Jasso</u>, 752 F.3d 1186, 1193 (9th Cir. 2014) (internal quotation marks, alterations, and citations omitted). Furthermore, <u>Guerrero-Jasso</u> involved a guilty plea (and not a trial), and the evidence regarding the omitted element was introduced, for the first time, <u>after</u> the defendant's conviction. <u>Id.</u> ("Where, as here, there was no trial but a guilty plea, and the evidence is introduced post-conviction by the government only to demonstrate harmlessness, it would fundamentally undermine the <u>Apprendi</u> protections to <u>require</u> the defendant affirmatively to present evidence to counter facts that were never properly established in accord with <u>Apprendi</u>

in the first place.").  On that basis, the instant case -- which involved overwhelming evidence presented at trial -- is easily distinguishable from Guerrero-Jasso.

The Eleventh Circuit case cited by Judge Lipez was the Neder decision on remand, which, as described above, explicitly rejected the other concurrence's approach.  See Neder, 197 F.3d at 1129 ("[T]he Supreme Court did not hold that omission of an element can never be harmless error unless uncontested.  Indeed, the Supreme Court emphasized that the correct focus of harmless-error analysis is: 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?'" (citation omitted)).  Furthermore, neither the Second Circuit nor the Fourth Circuit cases support the other concurrence's mandatory, exclusive, two-pronged test.  Recall that the other concurrence explicitly argues that Neder "requires that an omitted element be uncontested in order to be found harmless."  See ante, at 42.  In contrast, in both the Second and the Fourth Circuits, a finding that the omitted element is contested does not end the inquiry.  Indeed, when an omitted element is contested, the Second Circuit goes on to ask: (1) whether the evidence would permit a finding in favor of the defendant on that element; and (2) "'whether the jury would nonetheless have returned the same verdict of guilty.'" United States v. Needham, 604 F.3d 673, 679 (2d Cir. 2010) (quoting United States v. Jackson, 196 F.3d 383, 386 (2d Cir. 1999)).  The

Fourth Circuit conducts a similar inquiry: when an omitted element is contested, the reviewing court asks "whether the 'record contains evidence that could rationally lead to a contrary finding with respect to that omitted element.'" United States v. Brown, 202 F.3d 691, 701 (4th Cir. 2000) (quoting Neder, 527 U.S. at 19). The approaches of the Second and Fourth Circuits are thus consistent with my interpretation, and both refer back to the standard Chapman harmless-error test -- whether the jury's verdict would have been the same absent the error.

### 3.  State Courts

In a section titled "Criticism in the State Courts," the other concurrence cites three state-court decisions (from Mississippi, New Hampshire, and Indiana) that it implies undermine Neder in some way.  Ante, at 48.  Judge Lipez cites decisions by two state supreme courts (Mississippi and New Hampshire) to argue that "[s]everal state supreme courts have held that their state constitutions provide a broader jury trial guarantee than Neder recognized in the federal Constitution."  Id.  I do not question this assertion, but by its own terms, it is entirely irrelevant to the question under consideration.  The issue being debated does not involve interpretation of the Mississippi and New Hampshire state constitutions.  As for the 2005 Indiana intermediate state court of appeals decision that suggested that Neder might be "short-lived," see Freeze v. State, 827 N.E.2d 600, 605 (Ind. Ct. App. 2005), I

simply note that nine years have passed since the Indiana court's statement, and fifteen years have passed since <u>Neder</u> was decided. The Indiana prediction may yet be revealed as prescient, but for the moment, its prophesy has little bearing on the current state of the controlling precedent.

## IX.  Conclusion

Contrary to the position taken in the other concurrence, I have not encountered any "significant inconsistency" in First Circuit cases applying the harmless-error test.  Under a proper application of the governing precedent, the First Circuit cases identified by the other concurrence as "inconsistent" are rather almost entirely consistent with the correct interpretation of <u>Neder</u> and its progeny.  To the extent that any of those cases are inconsistent with the standard <u>Chapman</u> harmless-error test, they represent a very small minority: the overwhelming weight of the controlling Supreme Court and First Circuit cases militate against the other concurrence's creative interpretation of a few isolated statements in <u>Neder</u>.  In the absence of a Supreme Court ruling overruling <u>Neder</u>, any such "inconsistency" is properly resolved against the interpretation proposed in the other concurrence.

As stated by the Supreme Court in <u>Neder</u> itself, and as reinforced by subsequent Supreme Court and First Circuit cases, "the test for determining whether a constitutional error is harmless" remains the standard test articulated in <u>Chapman</u>:

"whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" <u>Neder</u>, 527 U.S. at 15 (quoting <u>Chapman</u>, 386 U.S. at 24); <u>see also</u> <u>Premo</u>, 131 S. Ct. at 744 ("[O]n direct review following an acknowledged constitutional error at trial," the government has "the burden of showing that it was 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoting <u>Neder</u>, 527 U.S. at 18)); <u>Mitchell</u>, 540 U.S. at 17-18 (same).

## X.  Appendix: Examples of Supreme Court, First Circuit, and Other Circuit Court Cases Discussing the Constitutional Harmless-Error Test

For the reader's reference and convenience, below is a non-exhaustive list of thirty relevant cases -- from the Supreme Court, First Circuit, and other circuit courts of appeal -- that discuss the constitutional harmless-error test and support the standard test as articulated in <u>Chapman</u>:

### A.  Supreme Court Cases

**1.** <u>Premo</u> v. <u>Moore</u>, 131 S. Ct. 733, 744 (2011) ("[O]n direct review following an acknowledged constitutional error at trial," the government has "the burden of showing that it was 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoting <u>Neder</u>, 527 U.S. at 18)).

**2.** <u>Rivera</u> v. <u>Illinois</u>, 556 U.S. 148, 155-56 (2009) (affirming the Illinois Supreme Court's finding of harmless error regarding the improper denial of a peremptory challenge, when "it was clear beyond a reasonable doubt that a rational jury would have found [Rivera] guilty absent the error" and the challenged juror's "presence on the jury did not prejudice Rivera because any rational trier of fact would have found [Rivera] guilty of murder on the evidence adduced at trial" (internal quotation marks and citations omitted)).

**3.** <u>Washington</u> v. <u>Recuenco</u>, 548 U.S. 212, 222 (2006) ("Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error.").

**4.** <u>Mitchell</u> v. <u>Esparza</u>, 540 U.S. 12, 17-18 (2003) ("A constitutional error is harmless when 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting <u>Neder</u>, 527 U.S. at 15)).

**5.** <u>Neder</u> v. <u>United States</u>, 527 U.S. 1, 18 (1999) (stating that for various constitutional errors -- including "the failure to instruct on an element in violation of the right to a jury trial" -- "the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?"); <u>id.</u> at 15 (articulating the standard constitutional harmless-error test as

"whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained'" (quoting Chapman, 386 U.S. at 24)); id. at 19 ("A reviewing court making this harmless-error inquiry . . . . asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.").

      **6.** Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) ("[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.").

      **7.** Chapman v. California, 386 U.S. 18, 24 (1967) ("requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").

**B. First Circuit Cases**

      **1.** United States v. Barnes, No. 11-1093, 2014 WL 5072846, at *3 n.5 (1st Cir. Oct. 10, 2014) ("An Alleyne error can be harmless if 'no reasonable jury' -- hearing the same evidence that the sentencing judge heard -- could hold the defendant responsible for a drug amount 'below the . . . threshold [ ] triggering the mandatory minimum[ ].'" (quoting Ramírez-Negrón, 751 F.3d at 51 n.8)); id. at *4 (stating that our "stiff test" for harmless error is whether the government has "prove[n] beyond a

reasonable doubt that the error did not 'contribute' to the complained-about sentence" (quoting Pérez-Ruiz, 353 F.3d at 17)).

    **2.** United States v. Santiago, No. 13-1146, 2014 WL 4494198, at *8 (1st Cir. Sept. 12, 2014) (stating that to determine whether a constitutional error is harmless, "the government has the burden of proving beyond a reasonable doubt that the error did not affect the defendant's substantial rights" (quoting United States v. Sepúlveda-Contreras, 466 F.3d 166, 171 (1st Cir. 2006))).

    **3.** United States v. Marshall, 753 F.3d 341, 346 (1st Cir. 2014) ("[A]ny error was harmless when assessed under the standard that instructional error, including omission of an element, is harmless if it is clear beyond a reasonable doubt that a rational jury would have found guilt absent the error.").

    **4.** Connolly v. Roden, 752 F.3d 505, 509 (1st Cir. 2014) ("In 1967, the Supreme Court in Chapman v. California articulated the constitutional harmless error standard, which provides that, on direct appellate review, an error at trial affecting the defendant's constitutional rights will be deemed harmless only if it can be shown to be harmless beyond a reasonable doubt." (quoting Chapman, 386 U.S. at 24)).

    **5.** United States v. Ramírez-Negrón, 751 F.3d 42, 51 n.8 (1st Cir. 2014) (stating than an Alleyne error would be harmless beyond a reasonable doubt if "no reasonable jury could

have found that the defendants were responsible for drug quantities below the respective thresholds triggering the mandatory minimum sentences").

**6.** United States v. Lyons, 740 F.3d 702, 714 (1st Cir. 2014) ("Where a jury is properly instructed on two theories of guilt, one of which is later determined to be invalid, we can affirm the conviction only if we conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." (citations and internal quotation marks omitted)).

**7.** United States v. Harakaly, 734 F.3d 88, 95 (1st Cir. 2013) ("In drug-trafficking cases involving Apprendi errors, we sometimes have treated the presence of overwhelming evidence of the requisite drug types and quantities as a proxy for harmlessness." (emphases added) (quoting Pérez-Ruiz, 353 F.3d at 18)); id. (finding harmless error when the defendant did "not seriously contest the finding that he was responsible for more than" the threshold quantity) (emphasis added); id. at 96 (finding the drug-quantity evidence to be overwhelming when "[t]he delivery that the police intercepted, taken alone, was nearly four times the triggering amount," and when the defendant himself "acknowledged responsibility for a quantity of drugs that far exceed[ed] the triggering amount").

**8.** United States v. Melvin, 730 F.3d 29, 39 (1st Cir. 2013) (the harmless-error test for a constitutional error

"requires reversal unless the government proves 'beyond a reasonable doubt that the error did not influence the verdict'") (quoting United States v. Sasso, 695 F.3d 25, 29 (1st Cir. 2012)).

9. United States v. McDonough, 727 F.3d 143, 157 (1st Cir. 2013) (unanimous opinion, which Judge Lipez joined in full) ("[A]n incorrect instruction does not require reversal if the error was harmless. In the case of an error of 'constitutional dimension,' the government is required to establish beyond a reasonable doubt that the error did not influence the verdict." (internal citation omitted)); id. at 162 ("[A]ssuming that [the district court refused to instruct the jury on] a required element, the evidence was more than sufficient to support the convictions. . . . [Thus,] we are confident that the same result would have obtained if [the jury was properly instructed].") (citations and internal quotation marks omitted).

10. United States v. Zhen Zhou Wu, 711 F.3d 1, 20 (1st Cir. 2013) ("In any event, given the [conflicting evidence] on this very matter, we cannot 'conclude[ ] beyond a reasonable doubt . . . that the jury verdict would have been the same absent the error.'" (quoting Neder, 527 U.S. at 17)).

11. United States v. Green, 698 F.3d 48, 53-54 (1st Cir. 2012) (finding a constitutional error to be harmless after concluding "beyond a reasonable doubt that any error here did not contribute to the verdict").

12.	United States v. Newell, 658 F.3d 1, 17 n.19 (1st Cir. 2011) (unanimous opinion, which Judge Lipez joined in full) ("[T]he failure to instruct the jury on [an omitted element] is subject to harmless error review," which "requires ascertaining 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (quoting Neder, 527 U.S. at 15)); id. ("[E]ven if the district court erred in not giving the requested materiality instruction . . . that error was harmless as the evidence of materiality was more than sufficient to support the convictions under this standard.").

13.	United States v. Dancy, 640 F.3d 455, 463 (1st Cir. 2011) ("Any error is harmless if the government shows it is 'highly probable that the error did not influence the verdict.' (quoting United States v. Flores–de–Jesús, 569 F.3d 8, 27 (1st Cir. 2009)).

14.	United States v. Godin, 534 F.3d 51, 61 (1st Cir. 2008) ("When examining whether the omission of an element in a jury instruction is harmless error, we ask whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." (internal quotation marks omitted)).

15.	United States v. Morgan, 384 F.3d 1, 8 (1st Cir. 2004) (stating that Apprendi errors "should be held harmless

so long as the evidence for the trial judge's factual findings is overwhelming and no reasonable jury could have disagreed with them").

16. United States v. Soto-Beníquez, 356 F.3d 1, 46 (1st Cir. 2003) ("An Apprendi error is harmless where the evidence overwhelmingly establishes the minimum drug quantity needed to justify the statutory maximum under which the defendants were sentenced.").

17. United States v. Pérez-Ruiz, 353 F.3d 1, 17 (1st Cir. 2003) ("[W]hen a non-structural error is of constitutional dimension[,] . . . . the government must prove that the error was harmless beyond a reasonable doubt, or, put another way, that it can fairly be said beyond any reasonable doubt that the assigned error did not contribute to the result of which the appellant complains."); id. at 19 (citing cases finding harmless error due to "overwhelming evidence of drug type and quantity" when there was "testimony describing quantities of drugs actually seized from coconspirators" or "the evidence tying the defendant to the charged conspiracy involved drugs that were indisputably in excess of the requisite amounts").

18. United States v. Prigmore, 243 F.3d 1, 21 (1st Cir. 2001) (articulating the Neder harmless-error test as whether it is "'clear beyond a reasonable doubt that a rational jury would have found' defendants guilty even if properly

instructed" (quoting Neder, 527 U.S. at 18)); id. at 21 n.7 (noting that the Chapman test applies to appellate review of constitutional errors) (citing Chapman, 386 U.S. at 24); id. at 22 ("We do not believe, however, that the evidence is so one-sided as to render harmless the underlying instructional error we have identified. Unlike the government, we do not see this as a case, like Neder, where it is far-fetched to conclude that a properly instructed jury might have returned different verdicts than those returned.").

## C. Cases from Other Circuits

**1.** United States v. Ramos-Cruz, 667 F.3d 487, 496 (4th Cir. 2012) ("[I]f the defendant contested the omitted element, we ask whether the record contains evidence that could rationally lead to a contrary finding with respect to that omitted element.") (internal quotation marks omitted).

**2.** United States v. Needham, 604 F.3d 673, 679 (2d Cir. 2010) ("In United States v. Jackson, 196 F.3d 383, 386-87 (2d Cir. 1999), we interpreted the Supreme Court's decision in Neder, describing the analysis a reviewing court must undertake to determine whether the omission of an element was harmless. In so doing, we held that "if the evidence supporting the omitted element was controverted, harmless error analysis requires the appellate court to conduct a two-part inquiry, searching the record in order to determine (a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and,

if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty.'" (quoting <u>Jackson</u>, 196 F.3d at 386)).

**3.** <u>United States</u> v. <u>Korey</u>, 472 F.3d 89, 96-97 (3d Cir. 2007) ("While holding that this jury instruction as to the defendant's state of mind was in error, we observed that '[a] verdict may still stand, despite erroneous jury instructions, where the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause the injury.'" (quoting <u>Whitney</u> v. <u>Horn</u>, 280 F.3d 240, 260 (3d Cir. 2002)) (internal quotation marks omitted)).

**4.** <u>United States</u> v. <u>Brown</u>, 202 F.3d 691, 701 (4th Cir. 2000) ("[I]f the defendant contested the omitted element, <u>Neder</u> mandates a second inquiry. In that event, we must determine whether the 'record contains evidence that could rationally lead to a contrary finding with respect to that omitted element.'" (quoting <u>Neder</u>, 527 U.S. at 19)).

**5.** <u>United States</u> v. <u>Neder</u>, 197 F.3d 1122, 1129 (11th Cir. 1999) (considering the Supreme Court's <u>Neder</u> decision on remand, and stating that "the Supreme Court did not hold that omission of an element can never be harmless error unless uncontested. Indeed, the Supreme Court emphasized that the correct focus of harmless-error analysis is: 'Is it clear beyond a reasonable doubt that a rational jury would have found the

defendant guilty absent the error?'" (citation omitted)); id. ("Thus, whether Neder contested materiality may be considered but is not the pivotal concern. Instead, what the evidence showed regarding materiality is the touchstone."); id. at 1129 n.6 ("Considered in context, the Supreme Court's statement clearly does not mean that omission of an element of an offense can never be harmless error unless uncontested."); id. ("The statement" -- that the error is harmless because "'the omitted element was uncontested and supported by overwhelming evidence'" -- "means only that the fact materiality was not contested supports the conclusion that the jury's verdict would have been the same absent the error." (citations omitted)).